379 So.2d 934 (1980)
Donald KIMBROUGH
v.
STATE of Mississippi.
No. 51683.
Supreme Court of Mississippi.
February 13, 1980.
*935 Chatwin M. Jackson, Kosciusko, for appellant.
A.F. Summer, Atty. Gen. by Robert D. Findley, Special Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and LEE, JJ.
PATTERSON, Chief Justice, for the Court:
Donald Kimbrough was tried in the Circuit Court of Attala County on a charge of armed robbery. From a verdict of guilty and a sentence of twenty years, he appeals, contending the state adduced insufficient evidence to support the conviction, and that inadequate advance notice of the hearing on the state's "Petition to Conduct Lineup" deprived him of due process of law.
At about 9:30 a.m. on February 9, 1979, Mrs. Victor Turner, an elderly widow then alone, was the victim of a robbery committed by a black male in her home in Attala County. Her assailant struck her on the head and shot her in the back with a shotgun before absconding with $47 taken from a family Bible. Miraculously surviving the assault, Mrs. Turner managed to crawl to her telephone and summon the authorities.
When Sheriff Marvin Lawrence arrived, he found Mrs. Turner in the front room of her home seated next to a desk on which there rested a book of blank checks, the top unsigned check being made to the order of "James Clark" in the amount of $5. On February 12, James Clark, half brother of Donald Kimbrough, accompanied Sheriff Lawrence and his aides on a search of a field road running about one mile between the home of Mrs. Turner and the home of Mrs. Alberta Hull, grandmother of both Clark and Kimbrough. Clark discovered and called to the others' attention yet another check, drawn on Mrs. Turner's account and made to the order of "James Clark," which had been discarded or lost along the road.
James Clark lived with Mrs. Hull, and Donald Kimbrough lived just "across the road" in his mother's trailer. Kimbrough and not Clark, however, spent the night of February 8 with Mrs. Hull, Clark having lodged elsewhere with a friend, expecting to go to work the following morning.
Mrs. Turner identified, both in and out of court, Donald Kimbrough as her assailant, although she mistakenly called him by the name "James Clark" immediately after the robbery, at the time of a lineup, and at the time of her in-court identification. The lineup, conducted on March 15, 1979, in the presence of defense counsel, who concedes it was fair and untainted by suggestiveness, involved eight or more persons, including both James Clark and Donald Kimbrough. Mrs. Turner identified Kimbrough as her assailant, although she referred to him as "James Clark." Later, in the sheriff's office, Mrs. Turner pointed to James Clark, out of the presence of Donald Kimbrough, erroneously stating, "that is the man I pointed out in [the lineup]." It is probable that Mrs. Turner's confusion arose from the resemblance of the half brothers, both of whom had for several years lived within a mile of her rural home. It is noteworthy, however, that each time she had the opportunity to view Clark and Kimbrough together, she positively identified Kimbrough as her assailant while referring to him as "James Clark."
The evidence, when viewed most favorable to the state, supports the jury's verdict. We think it clear that Mrs. Turner's confusion was considered nominal, because it was related to the assailant's name and not his identity. In our opinion, it did not destroy her identification of Kimbrough as the person who assaulted and robbed her. The jury, having heard her testimony along with that of the appellant, accepted her identification and rejected the alibi offered by the appellant.
In an out-of-court statement and from the stand, Kimbrough stated he spent the night of February 8 with his grandmother, Alberta Hull, and left before eight the next morning to hunt, carrying his grandmother's twelve-gauge shotgun and ammunition described as "slugs." He testified he *936 bagged a deer in the woods bordering the Natchez Trace and as he threw the deer onto his shoulder, heard a man shout, "Hold it!" Thinking the voice to be that of a warden he retreated into the woods, breaking the stock of his gun in his haste to escape. The stock, according to the appellant, was left behind along the bank of a creek which he jumped as he escaped the site.
As mentioned, the alibi testimony of the appellant was rejected by the jury. This was not unreasonable, in our opinion, because no wardens or other witnesses were produced to show their presence in the area, and a search shortly after the crime failed to disclose the carcass of a deer or the gunstock. Moreover, there exists great doubt as to whether there was any ammunition other than "bird shot" in the home of Mrs. Hull from which the appellant left. Mrs. Turner's wounds resulted from bird shot. Finally, when the sheriff came to investigate, Kimbrough concealed himself in the back of the house. Overall, the testimony of Kimbrough placed him in the vicinity of the Turner home with a shotgun at the time the assault and robbery. This factor, accompanied by the identification by Mrs. Turner, was sufficient, in our opinion, to support the jury's verdict, because its province in matters of credibility is broad. See Madison v. State, 290 So.2d 607 (Miss. 1973); Freeland v. State, 285 So.2d 895 (Miss. 1973); Clanton v. State, 279 So.2d 599 (Miss. 1973); Nash v. State, 278 So.2d 779 (Miss. 1973); Campbell v. State, 278 So.2d 420 (Miss. 1973); and cf. Gandy v. State, 373 So.2d 1042, 1045 (Miss. 1979).
The inconsistencies of the in-court identification go only to the credibility and weight of the evidence, which is a factual determination to be made by the jury. Luckett v. State, 354 So.2d 1119 (Miss. 1978); Vickers v. State, 323 So.2d 743 (Miss. 1975); and Passons v. State, 239 Miss. 629, 124 So.2d 847 (1960).
The appellant's remaining argument is that his counsel received no more than twenty-four hours notice prior to the holding of the March 15, 1979, lineup. However, defense counsel received notice of the lineup and attended. What is more, defense counsel concedes the lineup suffered from no constitutional infirmity whatsoever, all the process that was "due" having been afforded the appellant. We are nevertheless left with the argument that defense counsel should have been given time before the hearing on the "Petition to Conduct Line-up" in order "to research the applicable law," even though that "law" was indisputably followed by securing counsel's presence and eliminating any suggestiveness from the identification procedure. In essence, the appellant argues, "My rights were not violated, but because my lawyer had not enough time to determine whether my rights were violated, my rights were violated." This clearly poses a non sequitur within the contemplation of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.