504 So.2d 1196 (1987)
James Earl JONES
v.
STATE of Mississippi.
No. 56838.
Supreme Court of Mississippi.
March 18, 1987.
As Modified on Denial of Rehearing April 22, 1987.
*1197 James D. Minor, Oxford, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and ROBERTSON and GRIFFIN, JJ.
GRIFFIN, Justice, for the court:
James Earl Jones was tried and convicted for rape by the Circuit Court of Lafayette County. He was sentenced to serve a term of 35 years in the custody of the Mississippi Department of Corrections.
The basis for Jones' whole attack on his conviction is the asserted illegality of the pre-trial identification. Appellant further assigns as error the search of his home, improper closing argument, and introduction of evidence of separate crimes. We will address only the Fourth Amendment question posed by the search and the pre-trial identification. Other assignments merit no consideration.

I.
The following facts give rise to the assigned error on appeal: On Friday, October 26, 1984, at approximately 5:30 p.m., the victim and a friend went to dinner at a local restaurant in Oxford, Mississippi. The two young women remained there until 9:30 or 10:00 p.m., at which time they departed by car for another establishment to visit some friends.
Upon leaving this last stop, they were approached near their car by a black man estimated by the girls to be around 20 years old. The girls testified that despite their adamant denials to his requests that they give him a ride home, he somehow found his way into the back seat of the car.
Testimony showed that several blocks away at a stop sign defendant forced one girl into the back seat, while he took over driving. The girls testified further that their pleas to offer him money to pay for an alternate ride home went unheeded, and defendant's course carried them to a wooded area off Old Sardis Road. At that time, he produced a switchblade knife, and he directed the girls to remove their clothing.
Following one unsuccessful attempt at escape which left her with severely cut hands from having fought with defendant in fear of her life, the victim's friend escaped into the woods where she wandered for several hours before finally emerging from her ordeal. In the meantime, the defendant, after cutting the victim's clothes from her, raped her and forced her to drive him to another location where he departed. Somehow the victim traveled the rest of the way back to Oxford, where she was discovered by an officer with the police department curled up in a fetal position on the front seat of her car, still unclothed. She was taken to the Oxford-Lafayette Hospital, and was joined shortly thereafter by her friend, who had finally found her way out of the woods.
Within just a few hours of all these events, officers, following directions from *1198 the girls, found the scene of the crime where several items were observed in the area, to-wit: items of clothing of the victim and her friend, a necklace belonging to the victim, and a New York Yankee's baseball cap, allegedly worn by their assailant.
Then, between 8:30 and 9:00 that morning, October 27, 1984, the girls identified, at least to the satisfaction of the officers, the defendant as their assailant, having chosen him from an array of seven pictures presented to them. At 2:00 p.m., the same day, the girls identified appellant from a line-up.
Sheriff F.D. "Buddy" East and several other officers on that same afternoon testified that they had gone to defendant's residence (actually belonging to his father) and upon knocking at the door were told to enter. Defendant was advised of his rights at that time and then taken to the sheriff's office. Prior to their departure, the officers requested, and received permission to confiscate a pair of blue jeans lying on the floor. Appellant was again advised of his rights at the station and questioned about the crime.
Following interrogation of the defendant, the officers obtained a search warrant for the residence, and upon their return to it seized a knife, a dark jacket and a pair of men's underwear, all of which had been sighted by the girls as being worn or used by their assailant and which were included in the affidavit supporting the search warrant.
Appellant moved for suppression of the evidence of the search of his home, but after a hearing his motion was overruled. Appellant proceeded to trial on February 19, 1985, and this trial ended in a verdict of guilty February 21, 1985.

II.

DID THE TRIAL COURT ERR IN ALLOWING THE IN-COURT IDENTIFICATION OF DEFENDANT FOLLOWING WHAT HE ALLEGES WERE SUGGESTIVE PRE-TRIAL IDENTIFICATION PROCEDURES?
Appellant challenges the legal adequacy of the photographic spread and subsequent lineup, and claims that these out of court identifications influenced and tainted his in court identification as the perpetrator of the crime. In support thereof, he cites Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), a United States Supreme Court case in which it was held that a criminal defendant may claim that an identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identity that it led to a denial of due process of law. Appellant contends that that case also stands for the proposition that the determination to be made must be on the totality of the circumstances.
Also, in support of his case he cites Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), in which the United States Supreme Court delineated the following factors to be considered in analysis of the legal sufficiency of the identification procedure: (1) opportunity to view; (2) the degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; and (5) the time between the crime and the confrontation.
Appellant claims that several of these factors were not met in his own identification as the alleged assailant in the rape, and as such the identification procedure suffers from a legal inadequacy. Hence, he avers, his cause is therefore reversible.
Our own law concerning the admissibility of identification both pre- and post-trial is set out at length in York v. State, 413 So.2d 1372 (Miss. 1982). In York, we presented the history of trial court problems with identification and traced the United States Supreme Court decisions dealing with such. See York at pages 1374-1382, citing U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall, supra. These United States Supreme Court cases have presented a plethora of claims by defendants asserting their constitutional rights have been violated. Numerous causes of action presented to this Court *1199 have addressed these claims,[1] but our decision in York, concerning due process violations in the identification, serves as the best reference for the issues in the case at bar.
In York, supra, at 1383, Justice Hawkins discussed at length allegedly suggestive pre-trial procedures and the effect they have on in-court identification, and held that:
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
Even if testimony is proffered of the out-of-court identification itself, the same standard exists as to the above, with the omission of the word "irreparable."
In determining whether these standards are fulfilled, Neil v. Biggers states the following may be considered:
... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
409 U.S. [188] at 199, 93 S.Ct. [375] at 382 [34 L.Ed.2d 401].
In the final analysis, under Manson v. Brathwaite, "reliability is the linchpin in determining the admissibility... ."
Specifically, our review is limited to these standards as set forth above, given the totality of the circumstances test as set forth in Stovall, and whether or not the pre-trial identification "was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." York, at 1383.
The victim and her companion first participated in an identification process at the police station, where officers presented them with seven pictures. Previously, in their description of the assailant, we are led to believe (although the record is not entirely clear) that they had described their assailant as being a black male, around 18 to 25 years of age, wearing jeans, a dark shirt or jacket, and a cap. They testified that they had had ample opportunity and sufficient light to get a good look at him. Further testimony showed that together they eliminated one photo after another until there was one left, at which point the rape victim claimed "if it's any of them, it's him."
The photo of Jones is slightly larger than the other six pictures. He also is the only one wearing a cap, though not a New York Yankee cap, and a casual dark/black jacket. Too, he is the sole person of the seven men standing in front of a measuring device. However, the officers testified that this was the only picture of the defendant in their possession, and it was made with a different camera than the others. All of the pictures are of young black men about the same age and size. There is a suggestion of impermissibility. But, is it so impermissibly suggestive so as to give rise to a very substantial likelihood of misidentification?
We do not think so, and for the following reasons: While the cap had been found at the scene of the crime and apparently played a significant part in the defendant's identification, and ultimately in his conviction, numerous corroborative circumstances *1200 are present in support of his identification as well. Two officers had viewed the defendant in a Yankees' cap on previous occasions: once by Sheriff East a few days before, and again by an Oxford Police Department detective captain on the day the crime was committed. We note also that both the Oxford police and sheriff's department were apparently well acqainted with defendant. Finally, in dispensing of any remaining problem concerning the cap, we would point out that the record reveals that such a distinctive looking item worn by the rapist could not have had the effect of tainting the in-court identification when the police had been given an accurate and complete description of the man prior to the photographic identification and police lineup, and he was identified as well with great assurance at trial.
We believe that this identification testimony was competent, raising a jury issue of defendant's guilt, and find no error in permitting the in-court identification of the defendant.

III.

DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS EVIDENCE OF CERTAIN ITEMS ALLEGEDLY OBTAINED THROUGH AN INVALID SEARCH WARRANT?
Appellant contends that certain items seized by officers from the home he shares with his father, stepmother and half brothers and sisters (enumerated infra) were obtained without benefit of a valid search warrant, in that the underlying facts and circumstances used in the affidavit forming the basis for the issuance of the warrant were made with intentional inaccuracy.
In Garvis v. State, 483 So.2d 312 (Miss. 1986), we discussed error assigned by appellant alleging that there was no underlying factual basis to supply probable cause in the issuance of a search warrant. In Garvis, supra, at 314, we said:
We consider this question under the now familiar totality of the circumstances test accepted and enforced in so many of our recent cases. Jones v. State, 481 So.2d 798, 800 (Miss. 1985); Breckenridge v. State, 472 So.2d 373, 376 (Miss. 1985); McCommon v. State, 467 So.2d 940, 941 (Miss. 1985); Stringer v. State (Miss. No. 54,805, dec. February 27, 1985) (not yet reported); Hall v. State, 455 So.2d 1303, 1308-09 (Miss. 1984); Lee v. State, 435 So.2d 674 (Miss. 1983). This test has been accepted into our jurisprudence from Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) wherein the United States Supreme Court prescribed the task of the issuing magistrate as:
simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
103 S.Ct. at 2332. See also, Gandy v. State, 438 So.2d 279, 283 (Miss. 1983).
Furthermore, in Walker v. State, 473 So.2d 435 (Miss. 1985), we held that where information constituting the underlying facts and circumstances of an affidavit is furnished by an eyewitness rather than an informant, there is no need to show the party supplying the information was a credible person. See e.g. Foley v. State, 348 So.2d 1034 (Miss. 1977); Holt v. State, 348 So.2d 434 (Miss. 1977); Wolf v. State, 281 So.2d 445 (Miss. 1973). The rationale for the victim or witness exception is that the statements of such eyewitnesses are based on their own observation and thus are not likely to reflect "idle rumor of irresponsible conjecture." Walker, supra, at 438.
As established in our discussion of the previous assignment of error we find that the statements of the victims and their identification of the defendant from the pictures created probable cause for issuance of the search warrant.
Finally, we utilize in our decision the standards set forth in the case of Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 *1201 L.Ed.2d 667 (1978), in which the United States Supreme Court said:
[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.
In the case at bar, we find no such deliberately false allegations or reckless disregard for the truth, only the statements of two very brave young women, though at times understandably confused, which we deem to be reliable in establishing probable cause.
The decision of the trial court is, therefore, affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] See e.g., Chambers v. State, 402 So.2d 344 (Miss. 1981); Miller v. State, 399 So.2d 1338 (Miss. 1981); Bankston v. State, 391 So.2d 1005 (Miss. 1980); Kimbrough v. State, 379 So.2d 934 (Miss. 1980); Stewart v. State, 377 So.2d 1067 (Miss. 1979); Johnson v. State, 359 So.2d 1371 (Miss. 1978); Scott v. State, 359 So.2d 1355 (Miss. 1978); Clubb v. State, 350 So.2d 693 (Miss. 1977); Wilson v. State, 344 So.2d 739 (Miss. 1977); Fells v. State, 345 So.2d 618 (Miss. 1977); Gentry v. State, 338 So.2d 1229 (Miss. 1976); Oliver v. State, 285 So.2d 897 (Miss. 1973); Allen v. State, 274 So.2d 136 (Miss. 1973); Evans v. State, 273 So.2d 495 (Miss. 1973); Auman v. State, 271 So.2d 427 (Miss. 1973); Simes v. State, 250 So.2d 705 (Miss. 1971); Baylor v. State, 246 So.2d 516 (Miss. 1971); Dorsey v. State, 243 So.2d 550 (Miss. 1971); Sanders v. State, 219 So.2d 913 (Miss. 1969); Butler v. State, 217 So.2d 3 (Miss. 1968); Poole v. State, 216 So.2d 425 (Miss. 1968).