993 So.2d 386 (2008)
Gregory Deon JONES, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01994-COA.
Court of Appeals of Mississippi.
April 15, 2008.
Rehearing Denied July 29, 2008.
Certiorari Denied October 9, 2008.
*389 Glenn Sturdivant Swartzfager, Jackson, attorney for appellant.
Office Of Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before MYERS, P.J., IRVING and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Gregory Deon Jones was convicted in the Circuit Court of Rankin County for armed robbery. He was sentenced to life imprisonment without the possibility of parole as a violent habitual offender by an order entered August 14, 2006, and placed in the custody of the Mississippi Department of Corrections. Aggrieved, Jones appeals assigning the following issues for review:
I. Whether the fruits of Jones's arrest should have been suppressed.
II. Whether probable cause existed to warrant Jones's arrest.
III. Whether the trial court erred by denying Jones's motion to suppress.
IV. Whether the photographic lineup was suggestive and improper.
V. Whether the indictment should have been quashed.
VI. Whether the trial court erred in admitting the knife, shirt, and photographic lineup into evidence.
VII. Whether the trial court erred by not grating Jones's motion for a mistrial.

*390 VIII. Whether the trial court erred by not granting Jones's motion for a directed verdict.
Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. On February 5, 2005, at approximately 8:00 a.m., a man entered the Super Saver Exxon station at the intersection of Old Brandon Road and Pearson Road in Pearl, Mississippi. He purchased a cup of coffee and then exited the store. He reentered about five minutes later, pulled a knife on the store clerk,[1] demanded that she open the cash register, robbed the store of two hundred and forty-eight dollars, and fled the scene. Once the man was gone, the store clerk ran out of the store and hopped into the car of a customer. After explaining what had just occurred, the customer drove the store clerk to the pawn shop across the street and reported the incident to the Pearl Police Department.
¶ 3. The Pearl Police Department informed Detective Mark Logzino of the robbery later on that morning. When he arrived at the scene, Detective Logzino spoke to the store clerk who gave a detailed description of the armed robber. He also viewed a video of the events recorded by the store's video surveillance system. After viewing the tape, Detective Logzino contacted a detective at the Jackson Police Department in an attempt to identify the person involved in the robbery. From their conversation, Detective Logzino was able to identify Jones as a possible suspect. Detective Logzino had the Jackson Police Department compile a photographic lineup which included Jones and five other males with similar physical characteristics. Later that same day, the store clerk identified Jones from the photographic lineup as the armed robber. As a result of the identification, a warrant was issued for Jones's arrest.
¶ 4. On February 6, 2005, one day after the robbery was committed, Jones was spotted by Detectives Reginald Cooper and Tommy Jones of the Jackson Police Department at an Exxon gas station at the intersection of County Line Road and Ridgewood Road in Jackson, Mississippi. After watching him for a couple of minutes, the detectives approached Jones, who immediately took off running. The detectives pursued Jones around a fence behind the Exxon station to the rear parking lot of the Hilton Hotel on County Line Road. While police were in pursuit, they observed Jones twice reach into his pocket and discard what appeared to be a weapon. Jones was apprehended inside of the Hilton Hotel lobby/dining area. He was wearing the same shirt as identified by the store clerk and visible in the surveillance footage. After apprehending Jones, Detective Cooper recovered a knife from the area where Jones was seen discarding it. The knife was later identified by the store clerk as the knife that was used in the robbery.
¶ 5. At trial, the store clerk identified: (1) Gregory Jones as the armed robber, (2) the shirt Jones was wearing when arrested as the same in which he committed the armed robbery, and (3) the knife that Jones discarded while fleeing police as the same used in the commission of the armed robbery. After a short time of deliberation by the jury, the foreman told the trial judge that they were one vote short of a unanimous guilty verdict, but they seemed to be "deadlocked," because one juror was *391 not "considering any discussions." Finding the jury not to be "hopelessly deadlocked" the trial judge excused the jurors for the night. Before excusing them, the trial judge instructed the jurors that they were not to discuss the case with anyone and were to reconvene the following morning for deliberation. The following morning the jury returned a guilty verdict.
¶ 6. After sentencing, Jones sought to appeal the trial court's decision with the assistance of the Mississippi Office of Indigent Appeals. Counsel at that office filed a brief on behalf of Jones pursuant to Lindsey v. State, 939 So.2d 743 (Miss. 2005), stating that "there are no issues that counsel could in good faith present to the Court in this appeal." Jones continued to pursue his appeal by filing a pro se brief. Jones now appeals to this Court.

ANALYSIS

I. Whether the evidence was properly admitted.
¶ 7. We consider Issues I, III, and VI, as designated by Jones, together as each issue challenges whether the trial court erred by admitting the knife, shirt, and photographic lineup into evidence. Jones contends that his motion to suppress the evidence should have been granted because (1) the evidence was the product of an unlawful arrest and (2) its admittance was more prejudicial than probative under Rule 403 of the Mississippi Rules of Evidence.
¶ 8. Jones's motion to suppress the evidence appears in the record. Prior to trial, Jones was given the opportunity to bring his pretrial motions before the trial court. Jones addressed several of the district attorney's motions, but he failed to bring any of his own. Jones has failed to direct this Court to the trial court's ruling on the motion to suppress. If Jones ever obtained a ruling on the motion from the trial court, the ruling is not apparent from the record on appeal. It is the movant's responsibility to obtain a ruling on a motion from the trial court, and the movant's failure to pursue a ruling on a motion constitutes a waiver. Byrom v. State, 863 So.2d 836, 851(¶ 27) (Miss.2003). Further, when each item of evidence was presented at trial, Jones failed to renew his motion or object to its admittance. It is well-settled law in Mississippi that failure to make a contemporaneous objection regarding the admission of evidence at trial waives the argument for purposes of appeal. Gatlin v. State, 724 So.2d 359, 369(¶ 43) (Miss. 1998). Therefore, by failing to pursue a ruling on the motion from the trial court or by not objecting to the admission of the evidence, Jones abandoned the motion and waived this issue for appeal. This issue is without merit.

II. Whether probable cause existed to warrant Jones's arrest.
¶ 9. Jones claims that the Jackson Police Department arrested him on February 6, 2005, without probable cause and a valid arrest warrant. Again, Jones failed to address the legality of his arrest at trial and is procedurally barred from asserting it on appeal. However, plain errors of sufficient constitutional importance which are likely to affect the outcome of a case may be addressed for the first time by this Court upon appeal. Our supreme court "has recognized an exception to procedural bars where a fundamental constitutional right is involved." Maston v. State, 750 So.2d 1234, 1237(¶ 14) (Miss.1999); see Smith v. State, 477 So.2d 191, 195 (Miss.1985). Consequently, we will review this issue.
¶ 10. In order to arrest an individual suspected of a felony, either with or without a warrant, a police officer must have (1) probable cause to believe that a *392 felony has been committed and (2) probable cause to believe that the person proposed to be arrested is the one who committed it. Miss.Code Ann. § 99-3-7(1) (Rev.2007); Floyd v. State, 500 So.2d 989, 991 (Miss.1986); Henry v. State, 486 So.2d 1209, 1212 (Miss.1986); Swanier v. State, 473 So.2d 180, 186 (Miss.1985). "The existence of `probable cause' or `reasonable grounds' justifying an arrest without a warrant is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The determination depends upon the particular evidence and circumstances of the individual case." Smith v. State, 386 So.2d 1117, 1119 (Miss. 1980) (quoting McCollum v. State, 197 So.2d 252, 254-55 (Miss.1967)). "The facts necessary to uphold an arrest without a warrant must be sufficiently strong to support the issuance of a warrant for arrest." Swanier, 473 So.2d at 186 (quoting Smith, 386 So.2d at 1119).
¶ 11. Whether or not the arrest warrant was properly issued is irrelevant in this case. There is ample evidence to support that probable cause existed for Jones's arrest without a warrant. After receiving a description of the suspect, viewing the surveillance video, and speaking with the Jackson Police Department, Detective Logzino was able to identify Jones as a suspect in the robbery. In a photographic lineup that included five other individuals, the store clerk identified Jones as the armed robber. The store clerk's positive identification was sufficient in itself to provide the police with reasonable grounds to suspect that Jones committed the crime. See Clay v. State, 829 So.2d 676, 679(¶ 5) (Miss.Ct.App.2002) (holding the victim's identification of the defendant as the shooter provided reasonable grounds for the police to suspect the defendant had committed the act).
¶ 12. This was not, however, the only ground the police had for suspecting Jones committed the armed robbery. Their suspicions were heightened on the following day when Detective Cooper and his partner noticed a man fitting Jones's description outside of another gas station. The officers confirmed that Jones's clothes matched those in the store clerk's description as the clothes worn by the armed robber. When approached by the officers, Jones fled. In doing so, he discarded a knife later confirmed by the store clerk to be the same knife used in the robbery. Taking into account all of the evidence and circumstances known to the police at the time of the arrest, it is apparent to this Court that there was sufficient probable cause to arrest Jones with or without a warrant. This issue is without merit.

III. Whether the photographic lineup from which Jones was identified was so suggestive as to violate due process of the law.
¶ 13. Jones contends that the photographic lineup used by police was so suggestive as to violate his Fifth, Sixth, Eight, and Fourteenth Amendment rights. Jones argues that the differences between his photograph and the others impermissibly tainted the identification process. The State counters that the photographic lineup was not suggestive because nothing in the lineup singled out Jones's photograph.
¶ 14. A photographic lineup is impermissibly suggestive when the accused is "conspicuously singled out in some manner from others...." York v. State, 413 So.2d 1372, 1383 (Miss.1982). In Thompson v. State, 483 So.2d 690, 692 (Miss.1986) (citation omitted), our supreme court stated:
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eye witness who *393 viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
In Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the U.S. Supreme Court set out five factors to be considered in determining whether a lineup is impermissibly suggestive:
1. The opportunity of the witness to view the criminal at the time of the crime.
2. The witness's degree of attention.
3. The accuracy of the witness's prior description of the criminal.
4. The level of certainty demonstrated by the witness at the confrontation.
5. The length of time between the crime and the confrontation.
Id. at 199-200, 93 S.Ct. 375. In practice, Mississippi tends to place a heavy burden on defendants who are contesting the propriety of a pretrial identification procedure. Brown v. State, 829 So.2d 93, 102(¶ 18) (Miss.2002).
¶ 15. Jones points out that his photograph stands out from the other five used in the photographic identification process. He takes issue with the photographic lineup because his photograph indicated that it was taken by the Jackson Police Department and was eleven years old. He further points out that he is the only individual wearing a coat, which happened to be included in the store clerk's description of the armed robber. Jones concludes that the photographic lineup was impermissibly suggestive.
¶ 16. In Jones v. State, 504 So.2d 1196 (Miss.1987), the Mississippi Supreme Court addressed the issue of whether differences in a photograph lineup rose to the level of an impermissible suggestion. The defendant in Jones was the only suspect of the seven in the photographic lineup that wore a baseball cap. Id. at 1199. Our supreme court determined that this minor difference did not give rise to an impermissible suggestion. Id. at 1199-1200. Further, this Court has specifically held that a photographic lineup is permissible even when the backgrounds of the photographs clearly indicate that all individuals were in the custody of law enforcement, and the only difference is the photographic technique used to capture the defendant's likeness. See Anderson v. State, 724 So.2d 475, 478 (¶¶ 8-9) (Miss.Ct.App.1998).
¶ 17. Upon review of the photographs used in this case, we do not find that the minor differences in the appearance of Jones's photograph are so distinctive as to improperly single him out. All photographs used in the lineup have the same format, that is, they each contain the same background and are marked with "Jackson Police Department." The photographs do not contain inmate I.D. numbers, as Jones suggests. Moreover, the men in the photographs are all African-American males, have the same build, and possess the same facial features in accordance with the store clerk's description of the armed robber. The fact that Jones is the only individual wearing a coat is a minor difference and does not rise to the level of impermissible suggestion under Anderson and Jones. Further, the fact that the photograph of Jones was taken eleven years earlier does not create an impermissible suggestion that Jones was the armed robber. If anything, the fact that Jones was younger in his picture would seem to discourage identification, rather than suggest identification. We consequently do not find that the photographic identification lineup in this case is impermissibly suggestive. This issue is without merit.

*394 IV. Whether Jones's indictment should have been quashed.
¶ 18. Jones claims that the trial court erred by denying his motion to quash the indictment. Specifically, Jones contends that the indictment was fatally defective because it incorrectly stated that the date of the alleged robbery was March 5, 2005, rather than February 5, 2005. The State concedes that the original indictment did contain a scrivener's error with regard to the robbery date, but it points out that the error was cured pursuant to a motion to amend the indictment and order granting a date correction. Jones argues that rather than allow the prosecution to cure the error, the trial court should have quashed the indictment. He contends that the trial court's failure to do so warrants reversal.
¶ 19. The issue of whether an indictment is fatally defective is a question of law and warrants a broad standard of review by this Court. Nguyen v. State, 761 So.2d 873, 874(¶ 3) (Miss.2000). Since this issue is a question of law, the standard of review is de novo. Peterson v. State, 671 So.2d 647, 652 (Miss.1996) (superceded by statute). The purpose of an indictment is "to inform the defendant with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense." Moses v. State, 795 So.2d 569, 571(¶ 13) (Miss.Ct. App.2001). The indictment shall contain "the essential facts constituting the offenses charged and shall fully notify the defendant of the nature and cause of the accusation." URCCC 7.06.
¶ 20. Under Rule 7.06 of the Uniform Rules of Circuit and County Court Practice, failure to state the correct date in an indictment shall not render the indictment insufficient. Rule 7.09 provides that "[a]ll indictments may be amended as to form but not as to the substance of the offense charged." URCCC 7.09. Amendments to an indictment may be made only if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment. Eakes v. State, 665 So.2d 852, 859-60 (Miss.1995). An amendment to change the date on which the offense occurred is one of form only, unless time is an essential element or factor in the crime. Baine v. State, 604 So.2d 258, 260-61 (Miss.1992).
¶ 21. Time was not an essential element or factor in the armed robbery allegedly committed by Jones. Also, the facts in the record indicate that Jones never filed an alibi defense for March 5, 2005. During the motion hearing, Jones's counsel only argued that Jones's opportunity to present an alibi would be removed if the indictment were amended. Before signing the order to amend the indictment, the trial judge offered Jones the option of a continuance in order that he could form an alibi defense. After conferring with his attorney, Jones declined the offer. Therefore, we conclude that Jones was well aware of the charge against him and stood ready to defend that charge. "Reversal is not necessary where the same defense and the same witnesses are available for both the original date and the amended date on the indictment." Givens v. State, 730 So.2d 81, 88(¶ 22) (Miss.Ct.App.1998). We find that the amendment to Jones's indictment was of form rather than substance, and his defense under the amended indictment remained the same. The trial court did not err by failing to quash the indictment.

V. Whether the trial court erred by not granting Jones's motion for a mistrial.
¶ 22. Jones argues that the trial court erred by not granting him a mistrial *395 when the jury became "deadlocked" during deliberation. The State counters by contending that the jury was not "hopelessly deadlocked," and the trial judge was within his discretion to dismiss the jurors for the night and order that they reconvene the next morning to resume deliberations.
¶ 23. It has long been the rule that "a [criminal] jury should be given ample time to consider its verdict; and how long should it be held together for that purpose is for the trial judge, which decision will not be disturbed ... in the absence of the disclosure of such an abuse of this power by the trial judge as indicates that the jury was coerced into returning to a verdict." Schwartz v. State, 194 Miss. 315, 328, 12 So.2d 157, 160 (1943). "It is within the sound discretion of the trial judge as to how long he will keep the jury in deliberation, and this discretion will not be reviewed on appeal unless there has been a clear abuse of discretion." Dixon v. State, 306 So.2d 302, 304 (Miss.1975) (citation omitted). If a trial judge feels that there is a possibility that a jury might reach a verdict, he may return the jury for further deliberations by simply stating to the jury to please continue its deliberations, or he may give the Sharplin instruction.[2]Brantley v. State, 610 So.2d 1139, 1142 (Miss.1992). The Mississippi Supreme Court has approved the Sharplin instruction and has held that it may be given in either criminal or civil cases when the trial judge is confronted with a hung jury. Id.
¶ 24. Since there is no "bright line rule" as to when a trial judge should grant a continuance or recess, our analysis necessarily then focuses upon the unique facts of each case. Hooker v. State, 716 So.2d 1104, 1113(¶ 36) (Miss.1998).
¶ 25. After review of the record, it is apparent that the jury was not in a "hopeless deadlock." Rather, the verdict rested on the shoulders of one juror. After a short period of deliberation, the foreman returned to the trial judge to notify him that they had a "split decision." In fact, the jury stood eleven to one. The trial judge asked the foreman if he thought that allowing the jury time to "sleep on it" would make a difference. The foreman agreed that it would. Finding that there was a possibility that the jury could reach a verdict, the trial judge decided to return the jury for further deliberations. However, given that it had become late in the evening, he chose not to require the jury to deliberate that night. Instead, he allowed the jury to retire for the evening and reconvene the next morning. Before excusing the jury, he instructed them that they were not to discuss the case with anyone else. Further, upon arriving the next morning and before resuming deliberations, the trial judge delivered the Sharplin instruction to the jury as approved by our supreme court.
¶ 26. Under the circumstances, we find no evidence that the trial judge abused his discretion by sending the jurors home for the night and requiring them to resume deliberations the next morning. Therefore, the trial court did not err by denying Jones's motion for a mistrial.

VI. Whether the trial court erred by denying Jones's motion for a directed verdict.
¶ 27. Jones claims that the trial court erred in not granting his motion for directed *396 verdict at the close of the State's case-in-chief. He contends that the State was unable to prove its case by alleging that the impermissible photographic lineup caused the store clerk to misidentify him. The State contends that it presented enough evidence to prove that Jones was guilty of armed robbery beyond a reasonable doubt.
¶ 28. "[I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged and that he did so under such circumstances that every element of the offense existed...." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). This inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If there is sufficient evidence to support a guilty verdict, the motion for a directed verdict must be overruled. May v. State, 460 So.2d 778, 781 (Miss.1984).
¶ 29. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Jones of armed robbery. The State was able to present eyewitness testimony of the armed robbery and a positive identification of Jones as the perpetrator. His description on the day after the robbery matched that given to police by the store clerk, and upon apprehending Jones, police recovered the knife later identified as the weapon used in the armed robbery. Furthermore, to the degree possible, the testimony of the store clerk was consistent with the evidence in the surveillance tape and photographs. Jones's argument that the impermissible photographic lineup led to misidentification is moot, given that we have already held the lineup used by police to be permissible. In light of these facts, we find that any rational juror could have found beyond a reasonable doubt that all of the elements had been met by the State in proving Jones guilty of armed robbery. This issue is without merit.
¶ 30. We note that this Court has reviewed the considerations offered by the Mississippi Office of Indigent Appeals and have likewise found nothing that would upset our holding in this case. Accordingly, we affirm the decision of the Rankin County Circuit Court.
¶ 31. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE IMPRISONMENT AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Joanne Yurtkuran was the only clerk present at the store at the time of the alleged robbery.
[2] In Sharplin v. State, 330 So.2d 591, 596 (Miss. 1976), the supreme court approved an instruction which may be given in civil or criminal cases when the trial court is confronted with a hung jury. The instruction allows the court to return the jury for further deliberations when he or she thinks there is a likelihood that the jury may reach a verdict. Id.