# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00013-COA

CAMERON TRAVELSTEAD A/K/A CAMERON RAY TRAVELSTEAD A/K/A CAM TRAVELSTEAD                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF EXPLOITATION OF A CHILD AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWELVE YEARS TO SERVE, EIGHT YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED – 05/30/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Cameron Travelstead appeals the judgment of the Hinds County Circuit Court finding him guilty of exploitation of a child.  He argues that he deserves a new trial because the

circuit court improperly admitted certain hearsay testimony, allowed improper closing argument by the State, permitted the illegal amendment of the indictment, refused to give a proper jury instruction, and excluded relevant defense evidence. Travelstead also argues that he deserves a new trial because he received ineffective assistance of counsel.

¶2.     We find no merit to any of Travelstead's arguments; therefore, we affirm his conviction and sentence.

                                                FACTS

¶3.     A substantial portion of the evidence supporting Travelstead's conviction was gathered by the use of a peer-to-peer networking software program called FrostWire. Peer-to-peer networking software allows users to share electronic media between themselves directly over the internet. Once a user installs FrostWire, a folder is created in which the user can download files directly from other network users and likewise directly share the contents of that folder with other users of the networking software who search for content using FrostWire. Law enforcement has developed software to detect files being shared on peer-to-peer networks that have file names or other unique digital signatures called "hash values" associated with child pornography. This gives law enforcement the ability to generate reports of Internet Protocol (IP) addresses that download and share suspected child pornography. On January 31, 2010, Jay Houston, the deputy commander of the Internet Crimes Against Children Task Force, working through the Mississippi Attorney General's

Office, received a report.[1] After reviewing the hash values of the images contained in the report and independently determining that the photos were child pornography, Houston obtained a grand jury subpoena to obtain the identity of the person associated with the IP address from which the files had been downloaded.

¶4. The IP address from which the suspected child pornography was downloaded belonged to Comcast account holder Joel Travelstead, Travelstead's uncle. After obtaining a search warrant, agents went to Joel's home and found Travelstead there. After Mirandizing Travelstead, the agents questioned him, and he admitted to downloading pornography to his laptop computer.[2] The agents later performed a forensic exam of Travelstead's computer and found numerous deleted photos constituting child pornography, as well as child-pornography search terms used in searches that had been performed using the computer's search engines.

¶5. Travelstead was indicted, pursuant to Mississippi Code Annotated section 97-5-33(5) (Rev. 2007), on one count of exploitation of a minor by possessing child pornography. He was later convicted and sentenced to twenty years in the custody of the Mississippi Department of Corrections, with eight years suspended and twelve years to serve, plus five years of post-release supervision. He now appeals.

---

[1] The report listed the hash values of forty purportedly "known" child-pornography images based on a determination that the same images are in a database of confirmed child-pornography images maintained by the National Center for Missing and Exploited Children.

[2] Travelstead's counsel alleges that the questions were compounded and ambiguous, and Travelstead did not know whether the questions were referring to legal pornography or illegal child pornography.

DISCUSSION

*I.    Hearsay*

¶6.    "We review a trial court's decision to admit or exclude evidence under an abuse[-]of[-]discretion standard. Questions of law are reviewed under a de novo standard of review." *Anthony v. State*, 23 So. 3d 611, 616 (¶20) (Miss. Ct. App. 2009) (internal citation omitted).

¶7.    The National Center for Missing and Exploited Children (NCMEC) collects and stores images or photos of past victims of child pornography into a database to catch future perpetrators.  The agents in this case used this database and testified that they recognized several of the photos found on Travelstead's computer.  Based on that information, the agents classified the photos as child pornography—in addition to performing an independent evaluation themselves.

¶8.    Travelstead argues that the substantive testimony that the images found on his laptop were "known images" of child pornography—based on opinions, conclusions, and statements of others—was incompetent testimonial hearsay and should have been excluded.  He asserts that the underlying search warrant was ineffective because the agents presenting the evidence were not the individuals who made the original designation of the photos as child pornography.  He also asserts that the photos were confirmed by other unknown persons, and such unauthenticated information was incompetent hearsay.  Travelstead further asserts that the "known images" designation was presented as substantive proof that the alleged illegal images on his computer were of actual children.  He contends that hearsay testimony should

4

never be admitted to prove the truth of the matter asserted unless an exception applies, and neither Mississippi Rule of Evidence 703 (hearsay exception for expert testimony) nor Mississippi Rule of Evidence 803(6) (hearsay exception for business records) applies. He notes that this testimony was presented, over objection, by the State through Agent Wayne Mitchell,[3] Agent Jeremy Turner,[4] and Investigator Houston.[5]

¶9. The State responds that the trial court correctly allowed Investigator Houston, Agent Turner, and Agent Mitchell to testify that the images found on Travelstead's computer were "known images" of child pornography. Expert witnesses are allowed to rely on information from other experts. *Darnell v. Darnell*, 167 So. 3d 195, 207 (¶33) (Miss. 2014). Further, the State argues that the evidence against Travelstead was so overwhelming that even if the use of the term "known images" was error, the outcome of the trial would have been the same, as any error was harmless.

¶10. The State contends that during the investigation, Investigator Houston identified photos belonging to various series of known child pornography. The files found on Travelstead's computer were found by their known hash values, each picture having a separate hash value, and being a separate photograph of child pornography. Investigator

---

[3] Agent Mitchell is a certified computer-forensic examiner with the Federal Bureau of Investigation (FBI). He was admitted as an expert in the field of computer forensics.

[4] Agent Turner was not admitted as an expert in any field. His testimony was entered pursuant to Rule 803(6)'s business-records exception to the hearsay rule.

[5] Investigator Houston was admitted as an expert in peer-to-peer network sharing, undercover child-exploitation cases, and cybercrimes, generally.

Houston testified that the photographs that the State entered into evidence were printed from the attorney general's library of known child pornography. In addition, the State notes that the NCMEC reports were not entered into evidence. As experts, pursuant to Rule 703, Investigator Houston and Agent Mitchell were entitled to rely on information from other sources to form their opinions, even though they did not personally create that information. Investigator Houston and Agents Turner and Mitchell testified at trial and were subjected to vigorous cross-examination. Travelstead had a meaningful opportunity to confront the witnesses against him, and his constitutional right to confront his accusers was not violated. But assuming arguendo that Houston's testimony—that the images found on Travelstead's computer were "known images" of child pornography—was inadmissible, we find no error in the admission of that testimony, because of the pronouncement of the Mississippi Supreme Court in *Darnell*:

> While trial courts should be wary of allowing inadmissible testimony simply through the use of an expert witness, expert witnesses, under Rule 703, are *permitted to rely on inadmissible evidence* if it is the type reasonably relied upon by such experts. *See* [M.R.E.] 703. When faced with a Rule 703 situation, opposing counsel may then, in invoking Rule 705, *thoroughly cross-examine* the expert as to the facts or data underlying their opinion in an attempt to impeach the testimony.

*Darnell*, 167 So. 3d at 207 (¶33) (emphasis added). Consequently, this issue is without merit.

## II.    The State's Closing Argument Regarding the Sharing of Images

¶11.    Travelstead argues that he was not charged with disseminating child pornography, only exploitation of a minor by possessing child pornography; therefore, the State should not

have been able to comment on the sharing of images without proof that he had actually done so. During closing arguments, the prosecutor stated that he would like to prosecute the person who took some of the photographs of one particular girl in the subject images, supposedly the girl's father. Then the prosecutor, referring to the father's crime, argued that Travelstead "continues this crime while he views those pictures, masturbates to those pictures and shares those pictures with other people that have the same problems . . . ." Travelstead alleges that the prosecutor's argument was improper. "[A]rguing statements of fact that are not in evidence or necessarily inferable from it which are prejudicial to the defendant is error." *Dancer v. State*, 721 So. 2d 583, 589 (¶31) (Miss. 1998). The test for determining "if improper argument by the prosecutor to the jury requires reversal is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Id.* (internal quotation marks omitted). Based on this alleged error, Travelstead believes that he was unjustly prejudiced and implores this Court to find that his trial was rendered unfair and to reverse his conviction and grant a new trial.

¶12. The State responds that the trial court correctly overruled the defense's objection to the prosecution's statement, arguing that Travelstead shared illegal images of child pornography. According to the testimony of Investigator Houston, by downloading these files using FrostWire, Travelstead was also advertising that he has the files, so that when another user searches for the file, the software will be able to identify Travelstead's computer

7

as having the file, and portions of the file may be shared from Travelstead, as well as from other users. In addition, Investigator Houston explained that if a user does not opt out of sharing, then he shares files while he downloads them. The trial court also instructed the jury that arguments of counsel are not evidence, and that if the arguments of counsel are unsupported by the evidence, they should be disregarded. We find no error with the State's arguments in its closing. Further, based on Investigator Houston's testimony, it is evident that the software used to download the images also simultaneously shares the images with other users. This issue is without merit.

### III.    Ineffective Assistance of Counsel

¶13.    "Whether a defendant has received ineffective assistance of counsel is a question of law reviewed de novo under two prongs: 'first, the defendant must show that counsel's performance was deficient[;] [s]econd, the defendant must show that the deficient performance prejudiced the defense.'" *Taylor v. State*, 167 So. 3d 1143, 1146 (¶5) (Miss. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶14.    Travelstead enumerates several failures and acts of omission and commission by his trial attorney that he believes constitute ineffective assistance of counsel. However, neither he nor the State has stipulated that the record is sufficient for us to address the matters that, according to him, prove he received ineffective assistance of counsel, and it is clear to us that the record is adequate to address only some of the matters raised by him. The State contends that Travelstead's ineffective-assistance-of-counsel claim should be dismissed without

8

prejudice to preserve his right to later raise the issue in post-conviction proceedings, if he so chooses, or denied outright on the merits.

¶15.    An appellate court will not normally address the issue of ineffective assistance in a direct appeal, unless "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Grady v. State*, 190 So. 3d 870, 871 (¶8) (Miss. Ct. App. 2015). While many of the matters raised by Travelstead appear to fall under the category of trial strategy and could be addressed based on the record before us, we decline to do so, choosing instead to dismiss his ineffective-assistance-of-counsel claim without prejudice so that he may seek permission, if he so desires, from the Mississippi Supreme Court to raise the issue in a motion for post-conviction relief. *See id.*

### IV.    *Amended Indictment*

¶16.    The issue of whether an indictment is fatally defective is a question of law and warrants a broad standard of review by this Court. Since this issue is a question of law, the standard of review is de novo. The purpose of an indictment is to inform the defendant with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense. The indictment shall contain the essential facts constituting the offenses charged and shall fully notify the defendant of the nature and cause of the accusation.

*Jones v. State*, 993 So. 2d 386, 394 (¶19) (Miss. Ct. App. 2008) (internal citations and quotation marks omitted).

¶17.    Travelstead argues that it was error for the trial court to grant the State's motion to

9

amend the indictment from a time frame of one day—February 22, 2010—to a time frame of twenty-three days—January 31, 2010, through February 22, 2010. The defense's theory was that Travelstead was a curious teenager who stumbled onto something he should not have and deleted it or exited the website as soon as possible. With the expansion of the dates of the offense as provided in the amended indictment, he alleges that he had to defend not one act, but many. He further alleges that the amendment was one of substance and not of form. "An indictment may not be amended to change the nature of [the] charge, except by action of the grand jury which returned the indictment. To be permissible, the amendment to an indictment must be of form and not of substance." *Griffin v. State*, 584 So. 2d 1274, 1275 (Miss. 1991) (internal citations and quotation marks omitted).

¶18. The State responds that the trial court did not err in allowing the indictment to be amended. Even though the original indictment charged only images that were on the computer on February 22, 2010, the State argues that the prior images would have been admissible to show lack of mistake. The images, whether charged as individual crimes of possession, would have still been admissible for the prosecution to use to defeat Travelstead's claim of mistake. The fact that Travelstead performed multiple searches for child pornography and that he persisted in the behavior over time and accessed many images prior to February 22, 2010, would have been competent, admissible evidence to show lack of mistake. Therefore, the defense Travelstead had prior to the amendment was not diminished by the amendment to the indictment.

10

¶19. Travelstead is correct in his assertion that "[a] trial court has no authority to grant substantive amendments to indictments." *Conley v. State*, 790 So. 2d 773, 781 (¶16) (Miss. 2001). However, time was not an element of the crime he was indicted on; and the Mississippi Supreme Court has held that "unless time is an essential element or factor in the crime, an amendment to change the date on which the offense occurred is one of form only." *Id*. We also agree with the State's arguments. Accordingly, this issue is without merit.

     *V.    Jury Instruction D-7*

¶20.    The standard of review applicable when considering challenges to jury instructions requires that the appellate court avoid considering instructions in isolation, but rather consider them as a whole for determining whether the jury was properly instructed. Defects in specific instructions do not require reversal where all instructions taken as a whole fairly—although not perfectly—announce the applicable primary rules of law.

*Comby v. State*, 901 So. 2d 1282, 1288 (¶15) (Miss. Ct. App. 2004) (internal citations and quotation marks omitted).

¶21. Travelstead argues that the trial court erred by refusing to give instruction D-7 to the jury. He contends that the instruction was not redundant, properly stated the law, and should have been given. The instruction read as follows:

> The [c]ourt instructs the jury that it is the duty of each and every member of the jury in this case to decide the issues presented for yourself, and if, after a careful consideration of all the evidence in the case and the instructions of the [c]ourt on the law and free consultation with your fellow jurors, there is any single juror who has reasonable doubt of Cameron Travelstead's guilt, it is your solemn duty as a juror under oath to stand by your belief[;] you must never yield your belief simply because every other single member of the jury may disagree with you.

11

¶22. The State responds that the trial court did not err in refusing instruction D-7. The instruction addressed jury deliberations and the requirement of a unanimous verdict. The State argues that the language of D-7 is less than neutral and has the intended effect of encouraging a deadlock. The State further argues that D-7 was correctly refused by the trial court, because the substance of the instruction had already been addressed in instruction C-4, which reads: "The verdict of the jury must represent the considered judgment of each juror. In order to return a verdict it will be necessary that each juror agree thereto. In other words, all twelve jurors must agree before a verdict can be rendered by the jury." In addition, the State asserts that the trial judge stated that he would give such an instruction if the jury indicated a split that it could not resolve. We find no error with the court's administration of the jury instructions. This issue is without merit.

### VI. *Exclusion of Defense Evidence*

¶23. Finally, Travelstead argues that the court was in error for excluding testimony regarding his life experiences leading up to his arrest on the subject charges. He contends:

> If the Court finds that the portions of Travelstead's interview pertaining to the investigators asking him about possibly molesting children and all of the other questions about his background and sexuality were not extraneous and that his trial counsel was not ineffective in failing to seek exclusion of that information or by placing dependence of Travelstead's entire defense on testimony about his childhood, then it follows necessarily that the trial court erred in excluding testimony from Travelstead to explain all of the circumstances of his life which led him to accessing alleged child pornography and erred in excluding

12

testimony from Don Waller[,6] who counseled Travelstead. In essence, he argues that since the State offered evidence about Travelstead's sexual background, and he was questioned about molesting children, he was entitled to answer that evidence as a matter of law.

¶24. The State responds that the trial court correctly excluded the defense's evidence, arguing that the State's evidence explaining its investigation and questions regarding Travelstead's interest in children does not open the door for the admissibility of Travelstead's argument that he had a hard childhood and that his criminal behavior should be excused for that reason. The State contends that—although relevant to mitigation at sentencing—this evidence was irrelevant to whether he possessed images of child pornography on his laptop computer. The State further contends that the testimony of Travelstead's counselor would likely be irrelevant for the same reasons. We agree with the court's resolution of this matter. Based on the record, this evidence would not have been relevant to adjudicating the crime charged, and was properly excluded. This issue is without merit.

¶25. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY, FIRST JUDICIAL DISTRICT, OF CONVICTION OF EXPLOITATION OF A CHILD AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWELVE YEARS TO SERVE, EIGHT YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

---

6 According to the defense, Waller was Travelstead's church counselor and was to be admitted as an expert in mental-health counseling.

13

**LEE, C.J., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., NOT PARTICIPATING.**