507 So.2d 98 (1987)
Willie Lee WHITE, Jr.
v.
STATE of Mississippi.
No. 56849.
Supreme Court of Mississippi.
May 6, 1987.
Charles Douglas Evans, Grenada, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and DAN M. LEE, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Willie Lee White, Jr. was convicted in the Circuit Court of Grenada County on a charge of armed robbery and was sentenced to thirty-five (35) years, without benefit of parole, in the custody of the Mississippi Department of Corrections. He has appealed to this Court and assigns three (3) errors in the trial below.
*99 Dorris Goss testified that on December 18, 1984, at approximately 10:30 p.m., she was the attendant at Neely's Cab Stand in Grenada, Mississippi, when two black males entered, and, at gunpoint, ordered her to lie face down in the washroom; that she started toward the washroom and then suddenly ran for the door, her escape hastened by two gunshots toward her; and that she returned to the cab stand a short while later and discovered all the money missing. She identified appellant as one of the robbery participants.

I.

THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO SUSTAIN THE MOTION OF APPELLANT TO EXCLUDE IN-COURT AND OUT-OF-COURT IDENTIFICATION.
The lower court held a suppression hearing to determine whether or not the in-court and out-of-court identification of appellant should be suppressed. Immediately preceding the hearing, the lower court took judicial notice of its prior determination that appellant was illegally arrested on December 19, 1984, without probable cause, and that all physical evidence obtained by reason of that arrest was suppressed. However, it was shown in the suppression hearing that, upon being transported to the Grenada Police Department on December 19, 1984, pursuant to the illegal arrest, appellant was served with, and arrested on, an outstanding aggravated assault warrant dated October 19, 1984. On the day of the arrest, appellant was included in a lineup to be viewed by Dorris Goss, victim of the robbery. The appellant contends that the lineup was unduly suggestive.
At the suppression hearing, Officer Greg Harris testified that, since there were two suspects, he formed two separate lineups with one suspect in each. At the first lineup, Goss identified L.V. White as one of the men and stated that Ernest Potts "looked like the other one." Nine minutes later, a second lineup was presented and, without any direction from Officer Harris other than to take her time and be sure, Goss identified, without delay, Willie White as the second of the two individuals who robbed her.
According to Harris, the makeup of the lineups were black males in their mid-20s to early-40s with three of the five participants common to both lineups. One individual in the lineup had plaited hair, the appellant. According to Officer Harris and Goss, there was nothing suggestive about the lineup which would point out, or indicate to Goss, that the persons who committed the robbery were in the lineups. Their testimony was contradicted by appellant.
Goss testified that she was in appellant's presence for three to five minutes in the well-lighted cab stand; that with most of her attention directed at appellant, who had a gun, she noticed his hair was plaited and he wore a beard; and that she noticed something was tattooed on appellant's forehead. During the lineup, she was placed in an adjoining room from the lineup room, with a door separating them; that the door had a 12" x 12" window in it with 10" of the 12 inches in height covered with opaque paper; and that through the uncovered bottom two inches she looked at the lineup.
In York v. State, 413 So.2d 1372 (Miss. 1982), this Court reviewed United States Supreme Court decisions addressing due process violations predicated on impermissibly suggestive lineups. The Court said:
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
Even if testimony is proffered of the out-of-court identification itself, the same standard exists as to the above, with the omission of the word "irreparable."
In determining whether these standards are fulfilled, Neil v. Biggers states the following may be considered:
... the opportunity of the witness to view the criminal at the time of the *100 crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
409 U.S. at 199, 93 S.Ct. at 382.
In the final analysis, under Manson v. Brathwaite, "reliability is the linchpin in determining the admissibility... ."
York, 413 So.2d at 1383. See Foster v. State, 493 So.2d 1304 (Miss. 1986) (Foster was the only member of the lineup wearing a distinctive fishing hat, and the Court rejected Foster's contention that the lineup was impermissibly suggestive); Jones v. State, 504 So.2d 1196 (Miss. 1987), (Jones was the only person in a photograph display wearing a cap similar to the one worn by the rapist, and the display was not so suggestive as to be impermissible).
The United States Supreme Court decision in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), cited in York, supra, sets out five factors to be considered in determining whether a lineup is impermissibly suggestive. They follow with a reference to portions of the State's evidence at the suppression hearing:
(1) The opportunity of the witness to view the criminal at the time of the crime: Goss was not only a witness, but the victim who testified that in a well-lighted area for the duration of three to five minutes, she was in appellant's presence with all her energies focused upon him because he wielded a pistol.
(2) The witness's degree of attention: This appears satisfied by the above statement.
(3) The accuracy of the witness's prior description of the criminal: Goss described the two perpetrators as testified by Officer McCaulla as black males approximately 5'9" with one wearing a red shirt, blue jeans, and a beard, and the other wearing blue jeans; however, she failed to mention in any respect the tattoo on appellant's forehead. Considering that Goss gave her description on the same night only a short time after the robbery and subsequent gunfire and that she was asked to view the lineup the very next day, giving her only a short time for reflecting on her description, her failure to mention the tattoo, while of greatest distinguishing quality, does not sufficiently discredit her identification of appellant.
(4) The level of certainty demonstrated by the witness at the confrontation: During the first lineup, Goss stated that Ernest Potts "looks like the other one;" however, when viewing the second lineup, which also included Potts, Goss emphatically, and without hesitation, identified appellant. Furthermore, Goss positively identified appellant at trial based upon his features and his tattoo, which she testified to remembering as only India ink on his face.
(5) Length of time between the crime and the confrontation: There was only a single day lapse between the robbery and the lineup. However, 7 months elapsed between the robbery and the trial. The former statement gives validity to Goss's pretrial identification.
Appellant next contends under this assigned error that, but for his illegal arrest, the pretrial and in-court identification would not have occurred. In Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 445 (1963), the United States Supreme Court said:
"We need not hold that all evidence is `fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is `whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)."
See Yates v. State, 467 So.2d 884, 887 (Miss. 1984), and Poole v. State, 216 So.2d 425, 426-27 (Miss. 1968).
In United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), the *101 question was presented as to whether a victim's in-court identification should be suppressed as fruit of appellant's unlawful arrest. The Court stated three elements which the witness must possess without attributing any of the three to exploitation of the appellant's Fourth Amendment rights.
A victim's in-court identification of the accused has three distinct elements. First, the victim is present at trial to testify as to what transpired between her and the offender, and to identify the defendant as the culprit. Second, the victim possesses knowledge of and the ability to reconstruct the prior criminal occurrence and to identify the defendant from her observations of him at the time of the crime. And third, the defendant is also physically present in the courtroom, so that the victim can observe him and compare his appearance to that of the offender.
Crews, 445 U.S. at 471, 100 S.Ct. at 1250, 63 L.Ed.2d at 546.
The Court further stated:
He cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.
Crews, 445 U.S. at 474, 100 S.Ct. at 1251, 63 L.Ed.2d at 547. See also United States v. Hastings, 739 F.2d 1269, 1275 n. 7 (7th Cir.1984).
In Johnson v. Louisiana, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152, 161 (1972), the U.S. Supreme Court addressed a like contention in the following manner:
The validity of Johnson's arrest, however, is beside the point here, for it is clear that no evidence that might properly be characterized as the fruit of an illegal entry and arrest was used against him at his trial. Prior to the lineup, at which Johnson was represented by counsel, he was brought before a committing magistrate to advise him of his rights and set bail. At the time of the lineup, the detention of the appellant was under the authority of this commitment. Consequently, the lineup was conducted not by "exploitation" of the challenged arrest but "by means sufficiently distinguishable to be purged of the primary taint."
See also United States v. Cherry, 759 F.2d 1196 (5th Cir.1985); People v. Hillyard, 197 Colo. 83, 589 P.2d 939 (1979).
We are of the opinion that the lower court did not err in declining to suppress the out-of-court and in-court identifications of the appellant.

II.

THE LOWER COURT COMMITTED REVERSIBLE ERROR IN NOT ALLOWING DEFENSE COUNSEL TO RECALL DORRIS GOSS FOR THE LIMITED PURPOSE OF IMPEACHING POLICE OFFICER DARCEY McCAULLA.
On direct examination, in presenting his case-in-chief, appellant inquired of Officer Darcey McCaulla whether any officers attempted to lift fingerprints at the cab stand. Officer McCaulla testified that no one attempted to take fingerprints; that earlier he told appellant's counsel that an officer did attempt to take fingerprints; and that he made this earlier statement in response to a misunderstood question.
Upon completion of Officer McCaulla's direct and cross-examination, appellant sought leave of the court to recall Goss to the stand for the limited purpose of impeaching McCaulla's testimony regarding the attempt to lift fingerprints. The lower court denied that request. Appellant's request to recall Goss did not amount to a proffer, and was simply in the following language: "To testify if there were fingerprints attempted to be lifted." The statement amounts to somewhat of a fishing expedition, rather than to a fact substantive in its nature and relevant to the issue made in the case. See Stringer v. State, 500 So.2d 928, 933 (Miss. 1986).
This Court has stated the following rule with reference to proffers:

*102 [T]he rule is that "when a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case and whether its exclusion was actually harmful and prejudicial to the offerer."
Jenkins v. State, 483 So.2d 1330, 1333 (Miss. 1986) [citing Priest v. State, 275 So.2d 79, 82 (Miss. 1973)]; see also Bell v. State, 443 So.2d 16 (Miss. 1984).
We further note that Officer McCaulla admitted he made the earlier statement that no one attempted to take fingerprints in response to a misunderstood question. Therefore, if the appellant desired to recall Goss for impeachment of Officer McCaulla, there was nothing to impeach.
Assignment II is rejected.

III.

THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Dorris Goss, the victim, made a positive in-court and out-of-court identification of appellant as being one of the persons who committed the robbery. Appellant's defense was an alibi, i.e., that on December 18, 1984, from dusk until midnight, he was with Allie Stewart, Emma Jones and Frank Tollison at the home of Allie Stewart.
We are of the opinion that, accepting as true all the evidence which supports the State's position, together with all inferences reasonably flowing therefrom in the light most favorable to the State's theory of the case, there was a guilt issue for the jury, and the evidence supports the verdict. Haymond v. State, 478 So.2d 297, 300 (Miss. 1985); Fairley v. State, 467 So.2d 894, 902 (Miss. 1985); see also Griffin v. State, 494 So.2d 376, 378 (Miss. 1986); Ragland v. State, 403 So.2d 146 (Miss. 1981).
In Pate v. State, 419 So.2d 1324 (Miss. 1982), the appellant claimed that the identification testimony of the only witness so testifying was insufficient and that the jury's verdict should be reversed. The Court said:
The defense maintained that the prosecution failed to produce adequate proof of identity for the question of guilt to be decided by a jury. However, Gage positively and directly identified the defendant as the guilty party, and he did so before the jury in the courtroom. This Court has previously commented on the weight of testimony given by a single witness in the case of Henderson v. State, 187 Miss. 166, 192 So. 495 (1939), in which he stated: "The testimony of a single witness whose testimony is not unreasonable on its face, and whose credibility is not successfully impeached, will sustain a conviction although there may be more than one witness testifying in opposition to such witness... ." 187 Miss. at 171, 192 So. at 496. See also Passons v. State, 239 Miss. 629, 124 So.2d 847 (1960) (identification of accused in criminal case is primarily a jury question; positive identification by one witness may be sufficient).
Pate, 419 So.2d at 1326.
We are of the opinion that there were no reversible errors in the trial below. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.