GRIFFIS, P.J.,
 

 for the Court:
 

 ¶ 1. Xavier Shaw appeals his convictions for armed robbery, attempted armed robbery, and aggravated assault. He argues that the verdicts are against the overwhelming weight of the evidence because the two eyewitnesses to the crime gave conflicting testimonies and because their out-of-court identifications of Shaw were tainted by an overly suggestive photographic lineup. We find no error and affirm.
 

 FACTS
 

 ¶ 2. On August 9, 2009, Roosevelt Williams went to the Walnut Game Room in Clarksdale, Mississippi, to play dominoes with Joe Spencer, the owner of the game room. As Williams entered, he noticed a man pull a chair up to the building and sit to the side of the entrance to the
 
 *381
 
 game room. Later, while Spencer and Williams were playing dominoes, the same man entered the game room and asked Spencer if he had any barbeque. Spencer replied that he did have barbeque left over from the day before. He told the man to return later and pick up the barbeque once it had been reheated; the man then left the game room.
 

 ¶ 3. The same man returned a second time, but he did not pick up the barbeque. He left the game room only to return a third time. This time he was holding a gun and had a bandana wrapped around the lower half of his face. The man pointed the gun at Spencer and Williams as he demanded that they “give it up.” Spencer gave the man his wallet, which contained approximately thirty dollars. The man kept only the cash and threw Spencer’s wallet on the floor.
 

 ¶4. Williams also handed the man his wallet. When the man discovered that it contained no money, he told Williams: “B* * *h, I’m not playing with you.” He then put the gun up to Williams’s head and pulled the trigger. The gun clicked, but it did not fire. The man fled from the game room. Williams testified that he got in his car and drove around looking for the man. Williams returned to the game room and told Spencer that he could not see which way the man had gone. Spencer called the police to report the crime.
 

 ¶ 5. Two days later, both Spencer and Williams picked Shaw out of a photographic lineup as the man who had robbed them. They identified Shaw again during trial. The jury found Shaw guilty on all three charges. He was sentenced to fifteen years for armed robbery, fifteen years for attempted armed robbery, and eight years for aggravated assault. All three sentences we ordered to be served concurrently. Shaw’s motion for a judgment notwithstanding the verdict or, alternatively, for a new trial was denied.
 

 STANDARD OF REVIEW
 

 ¶ 6. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005). The evidence is weighed in the light most favorable to the verdict.
 
 Id.
 
 “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.”
 
 Id.
 
 (quoting
 
 Amiker v. Drugs for Less, Inc.,
 
 796 So.2d 942, 947 (¶ 18) (Miss.2000)). If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial.
 
 Id.
 
 “This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.”
 
 Langston v. State,
 
 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001).
 

 ANALYSIS
 

 ¶ 7. Shaw argues that the verdicts are against the overwhelming weight of the evidence. Because there was no physical evidence linking him to the crime, he acknowledges that the State’s case relied on the victims’ testimonies. Shaw contends that the victims’ identifications were tainted by a suggestive photographic lineup; therefore, the verdicts against him cannot stand. The State responds that even if the photographic lineup was suggestive, the identifications were reliable.
 

 ¶ 8. We begin with the photographic lineup. Shaw argues that of the six men featured in the lineup, he was the only one
 
 *382
 
 with an Afro hairstyle. He also argues that five of the men are holding whiteboards with numbers and dates. Shaw’s whiteboard was the only one that listed the date that this crime occurred. Shaw claims that the lineup was suggestive.
 

 ¶ 9. Shaw made no attempt to suppress the lineup prior to trial, nor did he object on this basis when the State entered the lineup into evidence. Instead, Shaw chose to present his argument that the lineup was suggestive to the jury.
 

 ¶ 10. Shaw’s argument may be convincing. “A photographic lineup is im-permissibly suggestive when the accused is ‘conspicuously singled out in some manner from others.’ ”
 
 Brown v. State,
 
 829 So.2d 93, 102 (¶ 18) (Miss.2002) (quoting
 
 York v. State,
 
 413 So.2d 1372, 1383 (Miss.1982)). Shaw is clearly the only suspect with a large Afro, and his whiteboard was the only one that displayed the date of the crime. But the suggestive nature of the lineup alone is insufficient to negate the in-court identifications of Shaw. Upon a review of the eyewitnesses’ testimonies in this case, we find that the jury was presented with ample evidence to find that the victims’ identifications of Shaw were reliable.
 

 ¶ 11. In
 
 York,
 
 the Mississippi Supreme Court set forth the following standard to determine whether an in-court identification is reliable:
 

 An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
 

 In determining whether these standards are fulfilled ... the following may be considered:
 

 the opportunity of the witness to view the criminal at the time of the crime, the witnesses] degree of attention, the accuracy of the witnesses] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
 

 York,
 
 413 So.2d at 1383 (footnotes and citations omitted).
 

 ¶ 12. Spencer testified that he knew Shaw stayed with someone in the neighborhood and that he had seen Shaw come to the game room with other neighborhood kids prior to the robbery. Spencer said that Shaw entered the game room three times on the day of the robbery. Shaw wore the same clothes each time; he merely covered his mouth with a bandana when he entered the third time. Spencer stated that he had an opportunity to get a good look at Shaw the first two times he entered the game room. He testified that he had no doubt that Shaw was the man who had robbed him.
 

 ¶ 13. Williams testified that he had seen Shaw outside the game room as well as during the three times that Shaw entered the game room. He also saw Shaw down the street from the game room immediately after the robbery had occurred. Williams said that he was able to get a good look at the face of the man who had attempted to rob him.
 

 ¶ 14. Spencer and Williams gave the same description of the man who had robbed them-a black male wearing an Afro hairstyle, blue shorts with a white stripe, and a white t-shirt. They both testified that, during the robbery, the bandana fell down slightly so that they could see a bit more of the man’s face. This evidence
 
 *383
 
 indicates that Spencer and Williams gave close attention to Shaw’s face. And they both identified Shaw in the photographic lineup just two days after the crime had occurred.
 

 ¶ 15. There was also circumstantial evidence presented by the State in addition to the victims’s testimonies. Keith Haynes testified that Shaw had been staying at his family’s house at the time of the robbery. Shaw had asked Haynes about a gun that he had found in Haynes’s closet. Haynes told Shaw that the gun did not work. Haynes’s mother, Lisa Haynes, testified that she saw Shaw on the day of the robbery and that he appeared to be scared like he wanted to hide from someone. When Haynes heard about the robbery, he discovered that his gun was missing.
 

 ¶ 16. Considering the totality of the circumstances, we do not find that the photographic lineup was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidenti-fication. Because the victims’ identifications of Shaw were reliable, his claim that the verdicts are against the overwhelming weight of the evidence is without merit.
 

 ¶ 17. Although not raised by the State, we note that “[a]n appellate court is under no obligation to review an assignment of error when an objection was not made or when an objection was untimely.”
 
 Caston v. State,
 
 823 So.2d 473, 503 (¶ 102) (Miss.2002). A specific and contemporaneous objection to the admission of evidence, such as the photographic lineup, must have been made at the time the evidence was admitted for the admissibility to be considered on appeal. Here, there was no objection raised. Therefore, any objection to the photographic lineup was waived.
 

 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF FIFTEEN YEARS; COUNT II, ATTEMPTED ARMED ROBBERY, AND SENTENCE OF FIFTEEN YEARS; AND COUNT III, AGGRAVATED ASSAULT, AND SENTENCE OF EIGHT YEARS, ALL TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHO-MA COUNTY.
 

 LEE, C.J., IRVING, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.