# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-01828-SCT

*JUSTIN STEWART*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/22/2012 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/06/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Justin Stewart appeals his convictions of armed robbery and felon in possession of a firearm. Stewart argues that the trial court improperly enhanced his sentence, in violation of his rights against double jeopardy, and erred in denying his motion to suppress out-of-court and in-court identifications. Finding no error, we affirm.

## FACTUAL BACKGROUND

¶2.    On July 23, 2010, Stewart and an accomplice[1] went to a Fred's store on North State Street in Jackson, Mississippi. Stewart purchased a pair of Hanes undergarments with cash. When the clerk, LaQuinta Nelson, opened the cash register to give Stewart his change, Stewart attempted to grab the money in the register. Nelson quickly closed the cash drawer. Stewart then pointed a gun at Nelson and demanded she reopen the cash drawer. Nelson complied. While Stewart was grabbing money out of the drawer, Nelson attracted the attention of Darryl Crumpton, the store manager. Crumpton approached and was ordered to get on the ground. Stewart demanded that Crumpton give him all of the money from the store's office. Instead, Crumpton took Stewart to another cash register. Stewart removed its contents. Crumpton informed Stewart that there was no more money in the store. Stewart fled the store with cash and credit-card receipts from the two registers. The police were informed that the robber was a black male wearing a pink and brown multi-colored hat. The police also were informed that the robber had sped away in a gold or tan car, which had struck a curb exiting the parking lot, causing the right front tire to rupture.

¶3.    Moments later, an officer observed two black males changing the right front tire of a tan car in a driveway a few blocks from Fred's. As the officer approached the suspects, they fled. Several officers canvassed the area, searching for the suspects. After finding his accomplice, the police found Stewart hiding between a shed and a house. After arresting Stewart, officers retrieved a pink multicolored hat, $1,494 in cash, a revolver, and two Fred's

---

[1] Stewart's accomplice pleaded guilty and the parties agreed not to mention him or his sentence during the trial.

2

receipts near Stewart's hiding spot. A Fred's shopping bag with a package of Hanes undergarments was found in the car.

¶4. On July 29, 2010, Nelson and Crumpton each were asked to review a photo lineup. Both identified Stewart without hesitation. No mention of facial tattoos appeared in the police reports. Nelson testified at trial that she mentioned facial tattoos to the police shortly after the crime. Crumpton testified that he did not.

¶5. On October 10, 2012, Justin Stewart was convicted of the crimes of armed robbery and felon in possession of a firearm. On October 22, 2012, he was sentenced to a total of thirty years, twenty years for armed robbery, with an additional five-year gun-enhancement sentence, and ten years for felon in possession of a firearm, with five years suspended. After Stewart's motion for judgment notwithstanding the verdict (JNOV) was denied, he timely appealed.

## ISSUES

¶6. The following two issues are raised for review:

**I. Whether the trial court erred in failing to suppress the photographic lineups where appellant's photograph was the only one with the facial tattoos.**

**II. Whether the trial court's sentence of Stewart to five years under the firearm-enhancement statute constituted double jeopardy, where he was already being sentenced under the armed-robbery felon-in-possession-of-a firearm statutes.**

## ANALYSIS

**I. Whether the trial court erred in failing to suppress the photographic line-ups and in-court identification.**

3

¶7.     This Court reviews photographic lineups and in-court identifications as follows:

> "The standard of review for suppression hearing findings in . . . pretrial identification cases is whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted." *Gray v. State*, 728 So. 2d 36, 68 (Miss. 1998) (internal citations omitted). This Court will not disturb a lower court's decision on the suppression of evidence unless "there is an absence of substantial credible evidence supporting it." *Id.* For an identification (made out of court or in court) to be excluded, it must be the result of an impermissibly suggestive lineup *and* the identification must be unreliable. *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982).

*Butler v. State*, 102 So. 3d 260, 264 (Miss. 2012) (emphasis original).

¶8.     "An unnecessarily suggestive pretrial identification is not automatically excluded; rather, 'evidence of a suggestive out-of-court identification will be admissible if, from a totality of the circumstances, the identification was reliable.'" *Id.* at 266 (quoting *York*, 413 So. 2d at 1381). This Court looks to five factors when determining whether an out-of-court identification was reliable: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Butler*, 102 So. 3d at 266.

¶9.     A photo lineup is impermissibly suggestive only if "the accused, when compared with the others, is *conspicuously* singled out in some manner from the others, either from appearance or statements by an officer." *Id.* at 264 (quoting *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982)) (emphasis added). "The test is whether the defendant was 'conspicuously

4

singled out in some manner from the others,' not whether the witness noticed that the defendant was singled out." *Butler v. State*, 102 So. 3d 260, 264 (Miss. 2012) (quoting *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982)). To be excluded, an out-of-court photo identification must have been "so impermissibly suggestive as to give rise to 'a very substantial likelihood of misidentification.'" *Butler*, 102 So. 3d at 265 (quoting *Neil v. Biggers*, 409 U.S. 188, 196-98, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972)). "Minor differences" between the suspects or photographic backgrounds "will not render a lineup impermissibly suggestive." *Bulter*, 102 So. 3d at 265.

¶10.    Finally, "an impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable* misidentification." *Id.* at 267 (citing *York*, 413 So. 2d at 1383) (emphasis original). "The standard for in-court identifications is heightened because it requires the likelihood of *irreparable* misidentification." *Bulter*, 102 So. 3d at 267 (citing *York*, 413 So. 2d at 1383) (emphasis original).

¶11.    Stewart argues that the photo lineups were impermissibly suggestive, since Stewart was the only person with facial tattoos. Thus, he argues that the in-court identification was tainted and unreliable. The State argues that the tattoos are a minor difference and that the trial judge concluded that the tattoos did not stand out in the photographs.

¶12.     We find that the case *sub judice* is similar to the cases of ***White***, ***Foster***, and ***Jones***, in which this Court upheld similar identifications. In ***White***, the witness noticed the defendant's plaited hair and forehead tattoo during the commission of the crime. ***White v. State***, 507 So. 2d 98, 99 (Miss. 1987). This Court upheld the out-of-court and in-court identifications of the defendant even though the defendant was the only suspect in the lineup with plaited hair. ***Id.*** at 99-101. The defendant also had a forehead tattoo, which the witness identified at trial. ***Id.*** at 99-100. In ***Foster***, this Court upheld the out-of-court and in-court identifications of the defendant even though he was the only person in the lineup wearing a fishing hat, where the defendant had worn a fishing hat during the robbery. ***Foster v. State***, 493 So. 2d 1304, 1305-06 (Miss. 1986). Likewise, in ***Jones***, this Court upheld the out-of-court and in-court identifications of the defendant even though he was the only suspect in the photo lineup wearing a hat similar to the one worn by the attacker. ***Jones v. State***, 504 So. 2d 1196, 1199-1200 (Miss. 1987). This Court found that, even though the hat may have played a significant part in the identification, it was not impermissibly suggestive, because the witness had given an accurate description and identified the defendant with great conviction at trial. ***Id.*** at 1200.

¶13.     In the case *sub judice*, in denying the motion to suppress, the trial court noted that there was no mention from the officer or police reports of the tattoo, and that the tattoos "just don't jump out at you."[2]   Stewart argues that the testimony adduced during the trial

---

[2]This finding is borne out by this Court's examination of the photo lineup.

contradicts the evidence relied upon by the trial court when ruling on the motion to suppress. Specifically, Stewart points to testimony from Nelson in which she states, "[t]he tattoos is what stuck out the most" about Stewart at the time of the robbery.

¶14. But Nelson also testified that the encounter with Stewart lasted more than five minutes. During that time, she observed Stewart and his accomplice enter the store. She remembered Stewart asking the manager, "where is your Hanes boxers." She later observed him in the checkout line for four to five minutes, where he let a couple of people go ahead of him. Nelson testified that the area was well lit. She and Stewart exchanged greetings. Nelson testified that Stewart was in such close proximity to her that he only had to whisper. She observed him when he threatened her with the gun. She observed Stewart as he stole money from another register. Nelson told the officers that Stewart was the same height as she, wore dark clothes, and wore a pink and brown hat with a letter on his hat. Nelson testified that Stewart's facial tattoos were located "[u]nder his eyes and in the middle of his forehead."[3] She remembered thinking "why would he get tattoos under his eye and right . . . in the middle of his forehead." Nelson identified Stewart at trial as the same person who had robbed her.

¶15. Crumpton offered similar detailed testimony. He stated that, even though a gun was pointed at him, he "remember[ed] looking at [Stewart]." He noticed that Stewart "had some

---

[3]During trial, Stewart was asked to remove his glasses and stand before the jury so that they could see his tattoos. The record reflected that "under each of his eyes are tattoos with the words 'life' and 'death,' and there is also a tattoo . . . on the forehead."

markings on his face." Crumpton also conversed with Stewart during the robbery. Although Crumpton mentioned at trial that he had picked Stewart out of the photo lineup "[b]y the markings on his face," he later testified that the tattoos were not the "main way" he identified Stewart. Importantly, Crumpton testified that he could have identified Stewart "even if he didn't have the markings . . . on his face." Crumpton's testimony was unequivocal. He testified as follows:

> Q. Did you have the opportunity to view the robber at register one?
> A. Yes, I did.
> Q. Did you have the opportunity to view the robber at register three?
> A. Yes, I did.
> Q. And did you have the opportunity to view the robber when he was putting a gun in your face and telling you to get on the ground?
> A. Yes, I did.
> Q. And did you have the opportunity to view the robber when you were walking between and to and from registers one and three?
> A. Yes, I did.
> Q. How certain are you that the person you saw is the defendant sitting next to Mr. Knapp, Justin Stewart?
> A. One hundred percent.

¶16. In short, Stewart failed to establish that he was conspicuously singled out from the other suspects in the photo lineups. While he was the only one with facial tattoos, the officer responsible for preparing the photo lineups testified that he was unaware Stewart had facial tattoos. Moreover, the trial court found the facial tattoos in the photo were nearly unrecognizable, which is supported by the photo lineup included in this record. The tattoo on the forehead is faintly visible. The dark lines under Stewart's eyes are not distinguishable as tattoos in the photo. Thus, the trial court had substantial, credible evidence to dismiss the motion to suppress the photo lineups.

8

## II. Whether the trial court erred in sentencing Justin Stewart to five years under the firearm enhancement statute.

¶17. This court applies a *de novo* review to double-jeopardy claims. ***Rowland v. State***, 98 So. 3d 1032, 1037 (Miss. 2012). Stewart raises this issue for the first time on appeal. Although constitutional questions not raised at trial generally are waived, double-jeopardy claims may be raised for the first time on appeal. *See* ***Rowland v. State***, 98 So. 3d 1032, 1036 (Miss. 2012).

¶18. The double-jeopardy clause provides three separate protections: "(1) protection from a second prosecution for the same offense after acquittal, (2) protection from a second prosecution for the same offense after conviction, and (3) protection from multiple punishments for the same offense." ***Kelly v. State***, 80 So. 3d 802, 805 (Miss. 2012) (citations omitted).

¶19. Stewart argues that he was punished multiple times for the same offense when he was charged with three separate crimes (armed robbery, felon in possession, firearm enhancement) for the same act. Stewart argues that possession of a firearm by a felon under Section 97-37-5 and the firearm enhancement under Section 97-37-37 are essentially the same elements under the "same-elements" test.[4] Thus, Stewart argues his five-year sentence for firearm enhancement should be vacated.

---

[4]The same-elements test, sometimes referred to as the "Blockburger" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence," and double jeopardy bars additional punishment and successive prosecution. ***White v. State***, 702 So. 2d 107, 109 (Miss. 1997).

¶20. The State argues that Section 97-37-37 operates as an enhanced sentence, not a separate conviction. Moreover, the State argues that the elements in Sections 97-37-5 and 97-37-37 are different. ("[O]ne merely requires felon in possession . . . and, the other felon in possession plus the added used [sic] or displayed [sic] during the commission of a felony.")

¶21. The Court of Appeals addressed this very argument in *Mayers v. State*. Stewart argues that *Mayers* violates the U.S. Supreme Court's decision in *Apprendi v. New Jersey*. In *Mayers*, the defendant was convicted under Section 97-3-7 for aggravated assault on a law-enforcement officer through the use of a gun. *Mayers v. State*, 42 So. 3d 33, 36-38 (Miss. Ct. App. 2010). The court held that no double-jeopardy concerns arise when a defendant is given an enhanced sentence under Section 97-37-37 and also is convicted and sentenced under Section 97-37-5. *Id.* at 45 ("Section 97-37-37, which is entitled: 'Enhanced penalty for use of firearm during commission of felony,' is clearly a sentence enhancement and does not set out separate elements of the underlying felony."). The court noted that, although *Appprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond reasonable doubt,"[5] the court found *Apprendi* inapplicable because Mayers failed to "cite to any specific element of the statute that was not decided by the jury." *Id.* at 45-46.

---

[5] *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000).

¶22. We hold that the "same-elements" test does not apply, because Section 97-37-37 is a sentence enhancement, not a separate crime. Thus, Stewart's double-jeopardy claim is without merit.

## CONCLUSION

¶23. We affirm the trial court's denial of Stewart's motion to suppress and Stewart's sentence.

¶24. **COUNT I: CONVICTION OF ARMED ROBBERY WITH GUN ENHANCEMENT AND SENTENCE OF TWENTY (20) YEARS FOR ARMED ROBBERY AND FIVE (5) YEARS FOR GUN ENHANCEMENT, FOR A TOTAL OF TWENTY-FIVE (25) YEARS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF FELON IN POSSESSION OF FIREARM AND SENTENCE OF TEN (10) YEARS, WITH FIVE (5) YEARS SUSPENDED, FIVE (5) YEARS PROBATION AND FIVE (5) YEARS POST-RELEASE SUPERVISION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH SENTENCE IN COUNT I. APPELLANT IS TO BE GIVEN CREDIT FOR TIME SERVED IN EACH COUNT.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**