# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-01711-SCT

*DALVIN LATHAM*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2018 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| TRIAL COURT ATTORNEYS: | JAMIE BANKS |
| | LESLIE FLINT |
| | RAYMOND WONG |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN T. COOK |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY SULSER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/06/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     A Bolivar County jury convicted Dalvin Latham of robbery in violation of Mississippi Code Section 97-3-73 (Rev. 2014).  The Circuit Court of the Second Judicial District of Bolivar County sentenced Latham to serve five years in the custody of the Mississippi Department of Corrections.

¶2.     Latham now appeals, arguing that his trial counsel was constitutionally ineffective in two ways. First, Latham argues that his trial counsel was ineffective by failing to object to the admission of an overly suggestive photographic lineup. Next, Latham argues that trial counsel was ineffective by refusing the trial court's proffered jury instruction C–8: an instruction concerning the accuracy and reliability of the victim's out-of-court identification of Latham as one of the persons who robbed her.

¶3.     We find that Latham fails to show that the victim's out-of-court identification was unreliable, and Latham fails to rebut the strong presumption that his trial counsel's refusal of jury instruction C–8 was anything other than tactical and strategic. Accordingly, we affirm Latham's conviction and sentence, and we dismiss his ineffective-assistance-of-counsel claim with prejudice.

**FACTS AND PROCEDURAL HISTORY**

¶4.     On May 19, 2016, Freddie Jean Williams, who was seventy-four years old at the time, arrived at her Cleveland, Mississippi, home around 11:00 p.m. Williams parked inside her carport and retrieved her blue purse and her clear work bag from the trunk of her car. As Williams was retrieving these items, she heard a noise and noticed three individuals approaching her from across the street. Upon noticing this, Williams placed one bag on each of her shoulders, and she closed her trunk. The three men then surrounded Williams and demanded that she hand over her purse and work bag. Williams refused. She then attempted to distance herself from the three men, but they moved in closer to grab her bags.

¶5.     As the three men came closer, Williams could see what the men were wearing, and she noticed that two men were short and one was tall. More importantly, Williams testified

2

that the men did not have their faces covered and that at that point, she was able to "really identify" one of the men. The man that Williams recognized during the robbery was later identified as Latham.

¶6. Williams testified that she recognized Latham's face because she had seen Latham more than once at her sister's house, and Williams had seen Latham walking by her home several times in the two-week period before she was robbed. After Williams had recognized Latham, she said to him, "I know you," thinking he would leave her alone. Instead, Latham snatched Williams's work bag off of her shoulder, the taller man snatched her purse and the three men ran away.

¶7. After the robbery, Williams ran to her sister's house down the street. There, Williams explained to her brother-in-law that she had been robbed, and he called the police. Officer Bryan Bracey with the Cleveland Police Department responded immediately. When Officer Bracey arrived, Williams was alone at her residence. Williams explained to Officer Bracey that three men had taken her purse and work bag, and she indicated the direction they fled. Williams also advised Officer Bracey that she recognized one of the individuals because he hung out with her great-nephew, but Williams explained that she did not know his name. Williams described Latham as having dreadlocks in his hair. Shortly thereafter, additional officers responded to Williams's residence, including Investigator Greg Perkins.

¶8. After Williams had initially described Latham to police, Williams's niece LaShonda Hodges arrived. Williams explained to Hodges that one of the robbers had dreadlocks and hung out at Hodges's mother's house, which is where Hodges also lived. Based on Williams's description, Hodges pulled up Latham's picture from Facebook, and Williams

3

immediately confirmed that Latham was the man that she recognized during the robbery. Williams and Hodges then relayed Latham's name to officers on scene, and Investigator Perkins developed Latham as a potential suspect. The officers searched the area for physical evidence and located Williams's blue purse approximately two streets away from Williams's home. The officers were unable to recover Williams's work bag.

¶9. There, Investigator Perkins had Williams come to the Cleveland Police Department. While at the department, Investigator Perkins presented Williams with a six-person photo lineup that contained a picture of Latham with dreadlocks. The other five individuals in the lineup did not have dreadlocks. Williams selected Latham out of the photo lineup by circling and initialing Latham's photo. Investigator Perkins testified that he typically selects random photos of other individuals "with similar build, height, and . . . similar complexion." Based on Williams's identification of Latham, Investigator Perkins charged Latham with robbery and issued a warrant for his arrest.

¶10. On September 28, 2016, a Bolivar County grand jury returned a one-count indictment against Latham for robbery in violation of Mississippi Code Section 97-3-73 (Rev. 2014). Because Williams, the victim, was over the age of sixty-five, the grand jury also indicted Latham under the sentencing enhancement of Mississippi Code Section 99-19-351 (Rev. 2015).

¶11. After four continuances, Latham's one-day trial occurred on November 16, 2018. The six-person photo lineup marked with Williams's selection of Latham as one of her assailants was admitted into evidence without objection. Additionally, Williams identified Latham in court as the man who took her work bag. Before trial, Latham had submitted his notice of

4

an alibi defense. At trial, Latham called one witness, whose primary purpose was to establish Latham's alibi. Anthony Lewis, Jr., testified that he, Latham, and Jeron Lucas were together at a carwash in Cleveland, Mississippi, during the time of the robbery. The jury found Latham guilty of robbery but declined to impose the sentencing enhancement. The trial court sentenced Latham to five years in the custody of Mississippi Department of Corrections. Following the denial of his posttrial motions, Latham appealed to this Court.

## STANDARD OF REVIEW

¶12. This Court reviews claims of ineffective assistance of counsel de novo. *Taylor v. State*, 167 So. 3d 1143, 1146 (Miss. 2015). When reviewing such claims, this Court applies the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Id.* "To prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was both deficient *and* prejudicial." *Stevenson v. State*, 283 So. 3d 697, 700 (Miss. 2019) (emphasis added) (citing *Hawkins v. State*, 255 So. 3d 1264, 1270 (Miss. 2018)).

¶13. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *McCoy v. State*, 147 So. 3d 333, 346 (Miss. 2014) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 686). In scrutinizing trial counsel's conduct, this Court "must strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance, and the challenged act or

omission 'might be considered sound trial strategy.'" ***Bennett v. State***, 990 So. 2d 155, 158 (Miss. 2008) (quoting ***Strickland***, 466 U.S. at 689).

¶14. This Court has explained that "there is no constitutional right to errorless counsel." ***Parker v. State***, 30 So. 3d 1222, 1233 (Miss. 2010) (citing ***Branch v. State***, 882 So. 2d 36, 52 (Miss. 2004)). "Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will we find that counsel's performance was deficient." ***Dartez v. State***, 177 So. 3d 420, 423 (Miss. 2015) (citing ***Holly v. State***, 716 So. 2d 979, 989 (Miss. 1998)).

**ANALYSIS**

¶15. On appeal, Latham argues that his conviction should be reversed and that he should receive a new trial because his defense attorney was constitutionally ineffective by failing to object to the impermissibly suggestive lineup and by refusing the trial court's jury instruction concerning eyewitness identification. The State contends that Latham's ineffective-assistance-of-counsel claim should be dismissed without prejudice because the claim is not ripe for review on direct appeal. Alternatively, the State contends that Latham's claim lacks merit.

¶16. At the outset, we note that this Court typically preserves ineffective-assistance-of-counsel claims for post-conviction review. *See, e.g.*, ***Stevenson v. State***, 283 So. 3d 697, 700-01 (Miss. 2019). "This Court may, however, address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record." ***Parker***, 30 So. 3d at 1232 (citing ***Archer v. State***, 986 So. 2d 951, 955 (Miss. 2008)). We find that Latham's claim is based on facts fully apparent from the record. The six-person photo lineup

6

from which Williams identified Latham is included in the record. Additionally, it is apparent from the record that defense counsel's refusal of the identification instruction was strategic. After our review, we find that Latham's claim lacks merit. Therefore, we affirm Latham's conviction and sentence.

### I.       Whether Latham's trial counsel was constitutionally ineffective by failing to object to the photo lineup.

¶17.    Latham claims that the six-person photo lineup presented to Williams the day after the robbery was impermissibly suggestive because Latham was the only person in the lineup with dreadlocks. Latham contends that his trial counsel was deficient by failing to object to the introduction of the lineup at trial. Latham, however, fails to show that an objection would have successfully excluded the lineup. Thus, Latham cannot show that his trial counsel's actions were deficient. Likewise, Latham cannot show that had counsel objected to the lineup, the outcome of the trial would have been different.

¶18.    To successfully exclude the lineup in this case, trial counsel would have been required to show that the lineup was impermissibly suggestive *and* unreliable. ***Stewart v. State***, 131 So. 3d 569, 572 (Miss. 2014).

¶19.    In ***Butler v. State***, we explained the following:

> To be excluded, an out-of-court identification must have resulted from an identification procedure that was so impermissibly suggestive as to give rise to "a very substantial likelihood of misidentification." [***York v. State***, 413 So. 2d 1372, 1383 (Miss. 1982)] (quoting ***Neil v. Biggers***, 409 U.S. 188, 196–98, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972)). Where the defendant is "the only one depicted with a distinctive feature," courts usually will find the lineup to be impermissibly suggestive. ***Bankston v. State***, 391 So. 2d 1005, 1008 (Miss. 1980) (where defendant was the only one with a mustache, and victim specifically remembered the robber had a mustache, the photo lineup was impermissibly suggestive). *See also* ***Shaw v. State***, 74 So. 3d 379, 382 (Miss.

7

Ct. App. 2011) (lineup was suggestive where defendant was the only suspect with a large Afro hair style; plus, defendant was holding a whiteboard displaying the date of the crime).

On the other hand, "minor differences" with the suspects or differences in the photograph backgrounds will not render a lineup impermissibly suggestive. *See Jones v. State*, 993 So. 2d 386, 393 (Miss. Ct. App. 2008) (where defendant was the only one wearing a coat, difference was minor and not impermissibly suggestive); *Dennis v. State*, 904 So. 2d 1134, 1136 (Miss. Ct. App. 2004) (where defendant's picture was slightly larger than the others and the others were marked "Carroll Co. Det. Center," the differences were minor and lineup was not impermissibly suggestive); *Stradford v. State*, 771 So. 2d 390, 393 (Miss. Ct. App. 2000) (absence of criminal identification tags did not single out defendants); *Anderson v. State*, 724 So. 2d 475, 478 (Miss. Ct. App. 1998) (photos that differ in technique and background are not so distinctive as to single out a suspect impermissibly). This Court has held that a photo lineup in which the suspect was the only one wearing a baseball cap, when the assailant's description included a baseball cap, had "a suggestion of impermissibility," but was not so impermissibly suggestive "as to give rise to a very substantial likelihood of misidentification." *Jones v. State*, 504 So. 2d 1196, 1199 (Miss. 1987).

*Butler v. State*, 102 So. 3d 260, 265 (Miss. 2012).

¶20. But even if the lineup presented to Williams was determined to be impermissibly suggestive, this Court has explained that "[a]n unnecessarily suggestive pretrial identification is not automatically excluded; rather, 'evidence of a suggestive out-of-court identification will be admissible if, from a totality of the circumstances, the identification was reliable.'" *Stewart*, 131 So. 3d at 572 (internal quotation marks omitted) (quoting *Butler*, 102 So. 3d at 266). Yet Latham's argument on appeal focuses solely on the suggestiveness of the lineup, and he does not attempt to argue or explain how Williams's pretrial identification of him was unreliable. Nonetheless, we find that there is no evidence that Williams's identification was unreliable.

¶21.    To determine whether an out-of-court identification was reliable, this Court considers

the following factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime,
> (2) the witness' degree of attention, (3) the accuracy of the witness'[s] prior
> description of the criminal, (4) the level of certainty demonstrated by the
> witness at the confrontation, and (5) the length of time between the crime and
> the confrontation.

*Stewart*, 131 So. 3d at 572 (citing *Butler*, 102 So. 3d at 266).

¶22.    Applying the above factors, we conclude that Williams's identification was reliable.

During the robbery, Williams testified that she could "really identify" Latham's uncovered

face and noticed his dreadlocks while the three men were surrounding her. Moreover,

Latham was obviously within close proximity to Williams, given that Latham snatched

Williams's work bag off her shoulder during the robbery. Williams clearly had a high degree

of attention because she immediately recognized Latham during the robbery and even said

to him, "I know you." Williams's descriptions of Latham to police and her niece appear

consistent and accurate. In fact, Williams's description of Latham coupled with Williams's

explaining that she had seen Latham at the niece's house before enabled Williams's niece to

pull up Latham's Facebook profile picture. When Williams's niece showed Williams

Latham's profile picture, Williams immediately confirmed that Latham was the robber that

she had recognized. Likewise, Williams reiterated that she was certain that Latham was the

man that had grabbed her work bag because she had seen Latham several times before the

night of the robbery. Williams explained that she had seen Latham at Williams's sister's

house more than once and that Williams had seen Latham walking up and down the street

9

in front of Williams's house. Finally, Williams selected Latham out of the photo lineup less than twenty-four hours after the robbery had occurred.

¶23. Williams's identification of Latham was reliable. Additionally, Williams's statements to police and her niece and Williams's trial testimony indicate that Latham was someone Williams was familiar with before the robbery. As a result, any objection by Latham's trial counsel would have been futile because counsel could not have shown that Williams's identification was unreliable. In other words, Latham cannot show that any attempt to exclude the out-of-court identification would have been successful. Therefore, Latham cannot show that the failure to object was either deficient or prejudicial.

> **II.    Whether Latham's trial counsel was constitutionally ineffective by refusing the trial court's proffered jury instruction on eyewitness identification.**

¶24. Latham takes issue with his trial counsel's refusal of the Court's proffered jury instruction C-8. Instruction C-8 would have instructed the jury to consider the five factors in determining the accuracy and reliability of Williams's identification of Latham.

¶25. As discussed above, *Strickland* requires that Latham show that trial counsel's performance was deficient and that the deficient performance was prejudicial. *Stevenson*, 283 So. 3d at 700. To successfully make such a showing, Latham had to rebut the strong presumption that counsel's decision was strategic. *Bennett*, 990 So. 2d at 158. Thereafter, Latham must show that "but for the attorney's errors, the outcome would have been different . . . ." *Dartez*, 177 So. 3d at 423 (citing *Holly*, 716 So. 2d at 989).

¶26. First, we find that Latham fails to rebut the presumption that counsel's refusal was strategic. This Court has explained that "[w]hether to request a certain instruction generally

10

is a matter of trial strategy." *McCoy*, 147 So. 3d at 347 (citing *Havard v. State*, 928 So. 2d 771, 790–91 (Miss. 2006)). At trial, Latham's counsel's defense strategy was alibi. It is apparent from defense counsel's closing argument that counsel believed focusing on Latham's alibi defense was more advantageous than drawing further attention to Williams's identification of Latham. Specifically, counsel explained the following during his closing argument:

> The whole idea behind identification through a six pack is we develop a suspect based on the evidence. We look at it, and then you identify them. You can see dreads. This is the only guy in there with dreads. But we got a better one. We have a better defense. He wasn't there.
>
> . . . .
>
> Now, alibi is very simple. You can't be in two places at one time. . . . I have a witness that says [Latham] was somewhere else, [which] raises a reasonable doubt. And if it's a reasonable doubt, you must give my client that reasonable doubt and find him not guilty.

¶27. Additionally, we note the record reflects that Latham's counsel affirmatively refused the proffered identification instruction. This affirmative refusal further supports our finding that counsel's refusal was strategic and tactical.

¶28. "As to whether defense counsel's trial strategies and decisions were sound, [Latham] has no guarantee of flawless, or successful, representation." *Havard*, 928 So. 2d at 790. In *Havard*, this Court reiterated "that counsel is given broad discretion to plan a trial strategy and to carry it out." *Id.* Here, Latham fails to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. Thus Latham has not shown that counsel's refusal was deficient.

11

¶29. Additionally, Latham fails to show that counsel's refusal of the identification instruction prejudiced the defense, as required by the second prong of ***Strickland***. ***Id.*** at 687. Because we have already explained that Williams's identification was reliable, the identification instruction would not have changed the outcome in this case. Moreover, Williams identified Latham in front of the jury during trial. But Latham fails to offer any evidence suggesting that either of Williams's out-of-court or in-court identifications were unreliable. Thus, Latham's claim fails under both ***Strickland*** prongs.

## CONCLUSION

¶30. Latham fails to make the requisite showing that his trial counsel's actions were either deficient or prejudicial. This failure defeats Latham's ineffective-assistance-of-counsel claim. As a result, we affirm Latham's conviction and sentence, and we dismiss Latham's ineffective-assistance-of-counsel claim with prejudice.

¶31. **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶32. The lineup in this case was impermissibly suggestive, and I believe that the majority should address this issue directly. However, I agree with the majority's analysis that under the totality of the circumstances, Williams's identification of Latham was nonetheless reliable. I therefore concur in part and in result.

¶33. This Court has explicitly acknowledged that a lineup is impermissibly suggestive when the defendant "was the only one depicted with a distinctive feature . . . ." ***Bankston***

12

*v. State*, 391 So. 2d 1005, 1008 (Miss. 1980). In ***Bankston***, the victim specifically identified one of the robbery perpetrators as having a mustache, and then was shown two photograph lineups in which Bankston was the only person with a mustache. *Id.* at 1006. This Court found "that showing the victim only one photograph of a man with a mustache when a mustache was one of the features of the robber recalled by the victim was impermissibly suggestive." *Id.* at 1008. The Court went on to apply the reliability factors and found that the identification was nonetheless reliable. *Id.* This case is indistinguishable from ***Bankston***. The victim specifically recalled that one of the robbery suspects had dreadlocks, a distinctive feature.[1] She was then shown a lineup that included only one photograph of a man with dreadlocks. The lineup was therefore impermissibly suggestive, and the majority should make a direct finding as such.

¶34. I therefore agree that the identification was reliable, and I consequently concur in the result affirming the conviction and dismissing the ineffective assistance of counsel claim. However, because precedent directly addresses the issue of impermissibility before us, this Court should make clear that the lineup in this case was impermissibly suggestible.

**KITCHENS, P.J., JOINS THIS OPINION.**

---

[1]This situation is no different than a witness identifying a suspect as having blond hair, then having law enforcement present a lineup with one person with blond hair and five people with brown hair.